[No. G033673. Fourth Dist., Div. Three. May 31, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY DEAN TAULTON, Defendant and Appellant.

1220

## COUNSEL

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda L. Cartwright-Ladendorf and Heather F. Wells, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RYLAARSDAM, Acting P. J.**—After a bifurcated trial, defendant Jerry Dean Taulton was convicted of one count of commercial burglary (Pen. Code, §§ 459, 460, subd. (b)). Thereafter the court conducted a bench trial and found defendant had previously been convicted of petty theft with a prior (Pen. Code, §§ 666, 488) and possession of stolen property (Pen. Code, § 496). The only evidence presented at the bench trial consisted of documents constituting a so-called 969b packet. The issue originally raised in this appeal was that the true findings, based solely on documentary evidence, violated defendant's right to confrontation under the Sixth Amendment as interpreted in *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (*Crawford*).

The trial court imposed an upper term sentence based on a finding "that the defendant has a very substantial criminal record . . . ." In his supplemental brief, defendant argues the court erred in imposing an upper term sentence based on facts that were neither alleged in the information nor proven to a jury, in violation of his rights under the Sixth Amendment as interpreted in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*).

We affirm the judgment as we conclude that (1) records of prior convictions are not "testimonial" and therefore not subject to the right to confrontation, and (2) whether or not *Blakely* requires a jury trial on the facts used by the court in making its sentencing choice, error, if any, was harmless. In light of the issues raised in the appeal, we need not recite the circumstances leading to defendant's conviction.

## DISCUSSION

*Records of prior convictions are not "testimonial" and therefore are not subject to Crawford's confrontation requirement.*

■ The trial court followed the procedure authorized in Penal Code section 969b in determining the truth of the allegations concerning prior convictions. Section 969b provides that "records or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which [defendant] has been imprisoned" may be used to establish prima facie evidence of prior convictions, provided "such records or copies thereof have been certified by the official custodian of such records . . . ." The statute thus creates an exception to the hearsay rule.

Defendant does not argue that the documents used to establish his prior convictions failed to satisfy the requirements of the statute. Rather, he contends that Penal Code section 969b is unconstitutional in light of the United States Supreme Court's holding in *Crawford*, in that it violates his right to confront witnesses. The scope of *Crawford* is presently under consideration by the California Supreme Court in *People v. Adams*, review granted October 13, 2004, S127373. That case involves the admission into evidence of a victim's out-of-court statement to the sheriff, an issue factually distinguishable from the one before us.

■ *Ohio v. Roberts* (1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531] held that extrajudicial statements may be introduced in criminal trials, as exceptions to the confrontation requirement of the Sixth Amendment, provided the statements bear "adequate 'indicia of reliability.' " (*Id.* at p. 66.) *Crawford* rejected this view; in the words of Justice Scalia: "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." (*Crawford, supra,* 541 U.S. at p. 62.) Relying on constitutional history, *Crawford* concluded the Sixth Amendment was drafted as a rejection of procedures involving the ex parte examination of witnesses by magistrates for subsequent use at trial.

*Crawford* unequivocally holds that "testimonial statements" may not be admitted unless the defendant had an opportunity to cross-examine the person whose hearsay testimony is sought to be introduced. To this extent, the opinion seems to create a bright line of admissibility. But the line grows dim when one seeks in vain for a definition of "testimonial statements." The opinion expressly refuses to give guidance on that question: "We leave for

another day any effort to spell out a comprehensive definition of 'testimonial.' " (*Crawford, supra,* 541 U.S. at p. 68.) But *Crawford* does provide some guidance on the issue of what is and what is not "testimonial" by furnishing examples of testimonial and nontestimonial statements.

As to "testimonial statements" the court stated, "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." (*Crawford, supra,* 541 U.S. at p. 68.) In a footnote discussing the historical context in which the Sixth Amendment arose, the court suggests, but does not decide, that dying declarations may deviate from the "general rule of criminal hearsay." (*Id.* at p. 56, fn. 6.) The only examples of nontestimonial hearsay are also contained in a discussion of the historical sources relied upon by the court. Discussing earlier cases, the court noted "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." (*Id.* at p. 56.)

A California case that proposed a test to determine whether a statement is "testimonial," *People v. Cervantes* (2004) 118 Cal.App.4th 162 [12 Cal.Rptr.3d 774], focused on the foreseeability of the potential use of a statement as evidence in a trial. We believe this focus is misplaced. The *Cervantes* court considered *Crawford* and concluded that, where one of the defendants made a statement to a friend, while requesting medical assistance, the statement was nontestimonial. (*Id.* at p. 174.) The court noted "the definition quoted from the amici curiae brief filed by the National Association of Criminal Defense Lawyers et al. [in *Crawford*], which asserted that testimonial statements include those ' "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . ." ' [Citation.]" (*Id.* at p. 173.)

Apparently adopting this test, *Cervantes* concluded that the statement made by the defendant to his friend was not testimonial because its use at trial was not foreseeable: "[I]t seems far more likely [the defendant] expected [his friend] would not repeat anything he told her to the police. Indeed, [the friend] admitted she knew [the defendants] were gang members and indicated she was afraid to testify in this case." (*People v. Cervantes, supra,* 118 Cal.App.4th at p. 174.) In basing its holding on foreseeability, *Cervantes* seems to have assumed that, by quoting from the amici curiae brief (see *Crawford, supra,* 541 U.S. at p. 51), the United States Supreme Court adopted its definition.

■ But nothing in *Crawford* compels the conclusion that, by quoting a statement from a brief, the court intended to adopt its language as the test for determining whether a statement is "testimonial." Rather, *Crawford* supports a conclusion that the test for determining whether a statement is "testimonial" is not whether its use in a potential trial is foreseeable, but whether it was obtained for the purpose of potentially using it in a criminal trial or determining if a criminal charge should issue.

In response to the Chief Justice's dissenting opinion, the majority in *Crawford* noted "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar." (*Crawford, supra,* 541 U.S. at p. 56, fn. 7.) Thus, the proscription against "testimonial statements" includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations." (*Id.* at p. 68.) The court distinguished between statements made to government officers and others: "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." (*Id.* at p. 51.) Thus, the focus of *Crawford* is the *purpose* for which the ex parte statement was obtained or given. As noted in *People v. Saffold* (2005) 127 Cal.App.4th 979 [26 Cal.Rptr.3d 190], "Although the Supreme Court declined to define 'testimonial' in a comprehensive fashion, it was concerned with the abuses at which the historic confrontation clause was directed. [Citation.]" (*Id.* at p. 984.)

■ *Crawford*'s example of business records as not being "testimonial" is also enlightening. (*Crawford, supra,* 541 U.S. at p. 56.) Such records are prepared for many purposes but not to provide evidence in a potential criminal trial or to determine whether criminal charges should issue. One of the requirements for the admissibility of business records is that "[t]he writing was made in the regular course of a business . . . ." (Evid. Code, § 1271, subd. (a).) The purpose of such a writing is to prepare a record of an act or event pertaining to a business, not to provide evidence. The fact that such records may, at times, become relevant evidence in a criminal trial, or even that such future use may be foreseeable, does not change the purpose for which the records were prepared. Whether, for example, the bookkeeper bent on theft may anticipate that the books of account may some day be used in a criminal trial does not change these records into "testimonial statements." A similar analysis should be applied to official records.

■ Evidence Code section 1280, subdivision (a) recognizes an exception to the hearsay rule for writings "made by and within the scope of duty of a public employee." Most such documents are like business records in that they are prepared to provide a chronicle of some act or event relating to the public employee's duty. Nevertheless, here we cannot draw a line as bright as that pertaining to business records. Some public records, particularly police records of interrogations, would clearly fit the definition of "testimonial statements," as they are produced to be used in a potential criminal trial or to determine whether criminal charges should issue. But to the extent that public records are not prepared for this purpose, they are subject to the same analysis as business records and would not constitute "testimonial statements." Records referenced in Penal Code section 969b fall into the latter category.

"[R]ecords or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which [defendant] has been imprisoned" (Pen. Code, § 969b) are prepared to document acts and events relating to convictions and imprisonments. Although they may ultimately be used in criminal proceedings, as the documents were here, they are not prepared for the purpose of providing evidence in criminal trials or for determining whether criminal charges should issue. Therefore, these records are beyond the scope of *Crawford*, and the court properly admitted them and considered them for the statutory purposes.

*Blakely error, if applicable at all, is subject to a harmless error analysis.*

■ Whether *Blakely* applies to an aggravated term under California's determinate sentencing law is a question currently pending before the California Supreme Court in *People v. Towne,* review granted July 14, 2004, S125677, and *People v. Black,* review granted July 28, 2004, S126182.* *Blakely* involved a Washington State sentencing scheme which permitted the court to impose an " 'exceptional' " sentence upon a posttrial judicial finding that defendant had acted with "deliberate cruelty." (*Blakely, supra,* 541 U.S. at p. 298 [124 S.Ct. at p. 2534].) It held that a sentence under these conditions violated the rule announced in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348] that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Blakely, supra,* 541 U.S. at p. 301 [124 S.Ct. at p. 2536].)

Here the trial court imposed the upper term of imprisonment, based on a posttrial judicial finding that defendant's recidivism constituted aggravating circumstances warranting such a sentence. (Cal. Rules of Court, rule

---

*Reporter's Note: For Supreme Court opinion, see 35 Cal.4th 1238.

4.421(b)(2).) In his supplemental brief, defendant argues that, under *Blakely*, he was entitled to have the facts providing the basis for the aggravated sentence determined by a jury and the sentence should therefore be reversed.

It would seem that the fact of defendant's recidivism, based on a consideration of his prior convictions, falls within the exception announced in *Apprendi*. It is an insignificant step from "the fact of a prior conviction" to a conclusion that defendant's prior convictions made him a criminal recidivist. But even if we assume it was error to consider defendant's recidivism because the issue was not decided by the jury, such error would be harmless. *United States v. Cotton* (2002) 535 U.S. 625, 631–632 [152 L.Ed.2d 860, 122 S.Ct. 1781] held that, if *Apprendi* error did not seriously affect the fairness or integrity of the proceedings and the facts relied upon by the court were uncontroverted and supported by overwhelming evidence, a harmless error analysis is appropriate. *Cotton* cited *United States v. Olano* (1993) 507 U.S. 725 [123 L.Ed.2d 508, 113 S.Ct. 1770] for the proposition that before *Apprendi* error demands a reversal, the error must have " 'affec[ted] substantial rights.' " (*United States v. Olano, supra,* 507 U.S. at p. 734.) This usually means the error "must have affected the outcome of the [trial] court proceedings. [Citations.]" (*Ibid.*)

Because *Blakely* rests on *Apprendi*, reversal due to sentencing error is not required in all circumstances. We may consider whether the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].) Defendant's record included an April 1988 conviction in Detroit, Michigan for malicious destruction of a building and a June 1988 conviction, also in Detroit, for felony larceny from a person. After moving to California, defendant was convicted in April 1995 of possession of forged notes and second degree burglary, both misdemeanor offenses, and in July 1995 for vandalism, resisting arrest, petty theft with priors, and receiving stolen property. In 1996, defendant's unauthorized possession of another person's credit cards was handled as a parole violation and defendant was returned to custody. In 1998 and again in 2000, defendant was once more convicted of forgery. Another arrest led to two parole violations in 2002.

Under these circumstances, we must conclude that, if the court erred in sentencing defendant to the upper term without a jury deciding the underlying facts, it did not affect the fairness or integrity of the proceedings. The facts relied upon by the court were uncontroverted and supported by overwhelming evidence. (*United States v. Cotton, supra,* 535 U.S. at pp. 632–633.) Considering the record of defendant's convictions, it is beyond a reasonable doubt that a jury would have reached the same conclusion as the trial court that defendant is a criminal recidivist. Thus, reversal is not required.

## DISPOSITION

The judgment is affirmed.

Bedsworth, J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 7, 2005.