[No. A119162. First Dist., Div. Four. Aug. 27, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES J. MORRIS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion parts A., B., and C.

## Counsel

Michael Willemsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacón and Linda M. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SEPULVEDA, J.**—Defendant was convicted by jury trial of grand theft (Pen. Code, § 487, subd. (a))[1] and receiving stolen property (§ 496, subd. (a)); two prison prior allegations (§ 667.5, subd. (b)) were found true by the court.[2] Defendant was sentenced to four years in state prison.[3] On appeal defendant

---

[1] All further section references are to the Penal Code unless otherwise indicated.

[2] Defendant waived his right to a jury trial on the prior conviction allegations and they were tried to the court.

[3] The sentence consisted of concurrent two-year sentences on counts one and two, and two one-year terms for the prison prior enhancements.

contends that the trial court erred in denying his motion for acquittal of grand theft (arguing that insufficient evidence was presented as to the fair market value of the stolen property) and in failing to instruct on the definition of fair market value; that he was improperly convicted of both stealing and possession of the same property; and that the admission of a rap sheet to prove his prior convictions violated his right to confrontation under the Sixth Amendment of the United States Constitution. We reverse defendant's conviction of receiving stolen property and otherwise affirm the judgment.

## FACTUAL BACKGROUND

Defendant was stopped by the Vallejo Police Department for a traffic infraction. He was unable to produce his driver's license or any other form of identification (he claimed his wallet had been stolen). Defendant indicated that he was going to the store to purchase food, but had no money on his person. The police officer had defendant leave his vehicle and searched him, finding a 12-inch crowbar or "nail puller" in his rear pocket. Another officer searched defendant's car and recovered bolt cutters, a pair of gloves, and eight new car keys (some of which were remote or keyless entry keys). A women's purse was also recovered. Defendant subsequently admitted stealing the car keys and other items from Nino's Quality Motors, a car dealership that had earlier reported the theft of the property.

Jamal Zumot, a part owner of Nino's, whose duties included some bookkeeping, testified that he was aware of the prices of the stolen items and estimated that the buffers that were taken were "fairly new" and that it would cost $1,500 to replace each one, the dolly had a value of $50, the two CD changers had a value of $1,000 each, the heat gun was valued at approximately $50, the drill at $40, the spray gun at approximately $600, and the nine keys had a total value of $1,000. In estimating the value of the keys, Zumot relied upon invoices that he had for them and detailed their individual value.[4] The keys belonged to cars that the dealership had just received. Defendant did not have permission from the dealership to remove any of the stolen items.

## DISCUSSION

A.–C.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] As to one of the keys, for a Saab, Zumot specifically clarified that its $250 value was the replacement value for the key.

[*]See footnote, *ante*, page 363.

D. *Admission of Certified Rap Sheet Not Error.*

Defendant's final contention is that the trial court erred in admitting a certified California Law Enforcement Communications System (CLETS) rap sheet[7] as proof of his alleged prison priors. He objected below that the exhibit was not reliable. The prosecutor argued that, pursuant to *People v. Dunlap* (1993) 18 Cal.App.4th 1468 [23 Cal.Rptr.2d 204], the rap sheet was admissible to prove that defendant had served a separate prison term for each alleged prior conviction and that he had not stayed free of prison custody for a five-year period (elements of the allegation of the prior prison conviction pursuant to § 667.5, subd. (b)). On appeal, defendant contends that the admission of the rap sheet violated his Sixth Amendment right to confrontation, citing *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (*Crawford*).

First, as respondent argues, this objection was not raised below and is therefore not preserved for appeal. (See *People v. Rowland* (1992) 4 Cal.4th 238, 265, fn. 4 [14 Cal.Rptr.2d 377, 841 P.2d 897]; *People v. Chaney* (2007) 148 Cal.App.4th 772, 777–779 [56 Cal.Rptr.3d 128].) However, even if we concluded (as defendant argues) that his attorney's objection below on the grounds of "reliability" was sufficient to preserve this issue, we would conclude that the admission of the rap sheet was not error.

■ CLETS rap sheets have been found to be admissible under the public records exception to the hearsay rule (Evid. Code, § 1280). As defendant notes, *People v. Martinez* (2000) 22 Cal.4th 106, 113, 119 [91 Cal.Rptr.2d 687, 990 P.2d 563] upheld a trial court finding that a CLETS rap sheet satisfied the requirement that, in order to be admissible under the public records exception to the hearsay rule, the entries in the record must have been made at or near the time of event recorded. The earlier case of *People v. Dunlap, supra,* 18 Cal.App.4th 1468, relied upon by the prosecutor below in the present case, held that a CLETS rap sheet was admissible to demonstrate that the defendant had served separate prison terms within the meaning of section 667.5, subdivision (b), as it was properly admitted under the public records exception to the hearsay rule. Both cases relied in part upon the statutory reporting and recording duties in the CLETS implementing legislation, and upon the presumption that official duties are properly performed under Evidence Code

---

[7] The prosecution also presented a certified copy of a "969b packet" (§ 969b) and a certified abstract of judgment to support the two alleged prison priors.

section 664. (See, e.g., *People v. Martinez, supra*, 22 Cal.4th at p. 125.) The trial court in the present case found that the CLETS rap sheet was properly authenticated and was therefore admissible as an official record under Evidence Code section 1280. Defendant limits his argument on appeal to the constitutional issue of whether the admission of the CLETS rap sheet violated his right to confrontation under *Crawford, supra*, 541 U.S. 36.

█ As defendant concedes, this very issue was decided adversely to him in *People v. Taulton* (2005) 129 Cal.App.4th 1218, 1224 [29 Cal.Rptr.3d 203] (*Taulton*). The *Taulton* court found that the admission of a rap sheet under the public records exception to the hearsay rule was not error under *Crawford, supra*, 541 U.S. 36, as it was not " 'testimonial' " hearsay. (*Taulton*, at p. 1222.) As the court in *Taulton* explained, "*Crawford* unequivocally holds that 'testimonial statements' may not be admitted unless the defendant had an opportunity to cross-examine the person whose hearsay testimony is sought to be introduced. . . . But the line grows dim when one seeks in vain for a definition of 'testimonial statements.' " (*Taulton, supra*, at p. 1222.) The *Taulton* court goes on to conclude that, "*Crawford* supports a conclusion that the test for determining whether a statement is 'testimonial' is not whether its use in a potential trial is foreseeable, but whether it was obtained for the purpose of potentially using it in a criminal trial or determining if a criminal charge should issue." (*Id.* at p. 1224.) *Taulton* found that rap sheets (admissible as public records) are similar to business records, which the court in *Crawford* cited as an example of nontestimonial evidence. (*Crawford, supra*, 541 U.S. at p. 56.)[8] Rap sheets are "not prepared for the purpose of providing evidence in criminal trials or for determining whether criminal charges should issue." (*Taulton, supra*, at p. 1225.) Defendant here argues that *Taulton* was wrongly decided, citing the more recent California Supreme Court case of *People v. Geier* (2007) 41 Cal.4th 555 [61 Cal.Rptr.3d 580, 161 P.3d 104] (*Geier*).

Defendant is correct that we have further guidance, both from the California Supreme Court and the United States Supreme Court, to aid in our analysis of what constitutes "testimonial hearsay," than did the court at the time the *Taulton* case was decided. The California Supreme Court in *Geier, supra*, 41 Cal.4th 555, applied the *Davis* case (*Davis v. Washington* (2006) 547 U.S. 813 [165 L.Ed.2d 224, 126 S.Ct. 2266] (*Davis*)) and concluded that admission of

---

[8] Although *Crawford* "leave[s] for another day" providing a definition of testimonial hearsay, the court did indicate that, the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." (*Crawford, supra*, 541 U.S. at p. 68.) Business and official records are not within this close kinship, as the court itself recognized. (*Id.* at p. 56.)

a laboratory report regarding DNA analysis results did not violate *Crawford* because the report was "a contemporaneous recordation of observable events rather than the documentation of past events." (*Geier, supra*, at p. 605.) Quoting *Davis, supra*, 547 U.S. 813, the court indicated that, " 'Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that *the primary purpose* of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that *the primary purpose* of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' [Citation.]" (*Geier, supra*, at pp. 603–604, italics added.) The *Geier* court noted that "while the possible use of such statements at a later trial remains an important consideration, as we noted in our *Cage* decision [*People v. Cage* (2007) 40 Cal.4th 965, 984 [56 Cal.Rptr.3d 789, 155 P.3d 205]], *Davis*[, *supra*, 547 U.S. 813] 'now confirms that the proper focus [in an inquiry whether an out-of-court statement is testimonial] is not on the mere reasonable chance that an out-of-court statement might later be used in a criminal trial.' [Citations.]" (*Geier, supra*, at p. 605.) These decisions support, rather than detract from, the court's reasoning in *Taulton, supra*, 129 Cal.App.4th at p. 1224.

Defendant argues, however, that because the rap sheet entries here were not made contemporaneously with the recorded events (as were the entries in the DNA reports in *Geier*) that the CLETS rap sheet was testimonial. He relies upon language in *Geier* indicating that a statement is testimonial if: " '(1) it is made to a law enforcement officer or by or to a law enforcement agent and (2) describes *a past fact* related to criminal activity for (3) possible use at a later trial.' " (See *Geier, supra*, 41 Cal.4th at p. 605, italics added by defendant.) Defendant overlooks that this language in *Geier* was specifically limited to the factual circumstances of that case. The sentence partially quoted by defendant must be read in context of the court's full finding: "While we have found no single analysis of the applicability of *Crawford*[, *supra*, 541 U.S. 36] and *Davis*[, *supra*, 547 U.S. 813] *to the kind of scientific evidence at issue in this case* to be entirely persuasive, we are nonetheless more persuaded by those cases concluding that such evidence is not testimonial, based on our own interpretation of *Crawford* and *Davis*. *For our purpose in this case, involving the admission of a DNA report*, what we extract from those decisions is that a statement is testimonial if (1) it is made to a law enforcement officer or by or to a law enforcement agent and (2) describes a past fact related to criminal activity for (3) possible use at a

later trial. Conversely, a statement that does not meet all three criteria is not testimonial." (*Ibid.*, italics added.) This definition of testimonial hearsay was limited to the context in which the issue occurred, the admission of a laboratory report.

■ Even if this test of what constitutes testimonial hearsay was intended to apply more broadly to types of hearsay other than laboratory reports, *Geier, supra,* 41 Cal.4th 555 is of no assistance to defendant. *Geier* made it clear that the mere reasonable chance that the hearsay might be used in a future criminal prosecution was not the proper focus in the determination of what constitutes testimonial hearsay. *Davis, supra,* 547 U.S. 813 and *Crawford, supra,* 541 U.S. 36 confirm this. *Davis* focuses on the *primary* purpose of the interrogation resulting in the hearsay statement and whether it was to record past events for a future criminal prosecution; *Crawford* specifically cites business records as an example of nontestimonial hearsay because they are not prepared for the *primary* purpose of criminal prosecution. The California Supreme Court had itself previously summarized the *Davis* opinion (in the context of a victim's statement to a police officer at a hospital more than an hour after the crime) as follows, "First, . . . the confrontation clause is concerned solely with hearsay statements that are testimonial, in that they are out-of-court analogs, in purpose and form, of the testimony given by witnesses at trial. Second, though a statement need not be sworn under oath to be testimonial, it must have occurred under circumstances that imparted, to some degree, the formality and solemnity characteristic of testimony. Third, the statement must have been given and taken *primarily for the purpose ascribed to testimony—to establish or prove some past fact for possible use in a criminal trial.* Fourth, *the primary purpose* for which a statement was given and taken is to be determined 'objectively,' considering all the circumstances that might reasonably bear on the intent of the participants in the conversation." (*People v. Cage, supra,* 40 Cal.4th 965, 984, italics added, fn. omitted.) Focusing on the *primary* purpose of the hearsay statements in the present case, it is clear that they are not testimonial.

As the *Taulton* court reasoned, rap sheets fall outside of *Crawford* because they are "prepared to document acts and events relating to convictions and imprisonments" (*Taulton, supra,* 129 Cal.App.4th at p. 1225), and not for the primary purpose of providing evidence in a trial. The purpose of CLETS rap sheets is to permit law enforcement to track necessary information regarding the arrest, conviction, and sentencing of

individuals and to communicate that information to other law enforcement agencies.[9]

Second, defendant's interpretation of the applicability of *Geier* in the present case is not logical. Defendant argues specifically that because the entries in the rap sheet were not made contemporaneously with the events recorded, the rap sheets are testimonial under the *Geier* three-part test set forth above. The DNA report in *Geier* was not testimonial, he argues, "because it 'constitutes a contemporaneous recordation of observable events rather than the documentation of past events.' " Thus, he reasons, the rap sheet is testimonial as "entries may be made 30–90 days after the event . . . by persons who did not personally observe the event." If the *Geier* test and reasoning were applied as argued by defendant, in order to meet the "contemporaneous" requirement, the reporting and entry of data reflected in a rap sheet would have to be made contemporaneously with the events such as a defendant's arrest, conviction, sentencing, admission to state prison, etc., by the person who personally observed the event. That type of immediate reporting of the data collected under the CLETS system is extremely impracticable if not wholly impossible.

There are additional reasons why rap sheets are not the type of testimonial hearsay to which *Crawford* was meant to apply. As previously indicated, the California Supreme Court in *People v. Martinez, supra*, 22 Cal.4th 106 discussed CLETS rap sheets at length. In *Martinez*, an employee of the district attorney's office familiar with accessing the CLETS system testified as background information regarding the CLETS system. The trial court took judicial notice of certain statutes which imposed obligations on law enforcement agencies to compile and report criminal history information into the CLETS system. For our purposes here, suffice it to say that the source of the information contained in a CLETS rap sheet is varied, as police agencies are required to report arrests occurring in their jurisdiction, courts are required to report conviction and sentencing information from their jurisdictions, detention facilities are required to report admissions and releases from detention facilities, and the Department of Justice (DOJ) is required to compile information gathered from these various sources and to supply it by means of the automated rap sheet system to requesting law enforcement agencies,

---

[9] The CLETS system was established in 1965; the Legislature's purpose and intent in establishing the criminal recordkeeping system was codified in Government Code section 15151. According to that section, the CLETS system was established in order to provide "an efficient law enforcement communications network available to all [public agencies of law enforcement]. It is the intent of the Legislature that such a network be established and maintained in a condition adequate to the needs of law enforcement. It is the purpose of this chapter to establish a law enforcement telecommunications system for the State of California." (Gov. Code, § 15151.)

district attorneys, probation officers, and courts.[10] (*People v. Dunlap, supra,* 18 Cal.App.4th at pp. 1477–1478; see also *Martinez, supra,* 22 Cal.4th at pp. 120–125 [discussion of applicable code sections].) The resultant nature of the hearsay at issue in the present case removes it from the umbrella of testimonial hearsay for several reasons.

First, the statements contained in these compilations of data are not statements of the type addressed in *Crawford* or *Davis,* as they are not analogs for testimony at trial—statements made with the solemnity associated with testimony at trial. They are mere compilations of statistical data as detailed above. Further, the mere fact that the information contained in a rap sheet necessarily relates to *past* events does not mean that it "describes a past fact *related to criminal activity*" for potential use at trial, as described in *Geier's* three-part test for whether or not DNA reports are testimonial hearsay. (*Geier, supra,* 41 Cal.4th at p. 605, italics added.) The past facts being communicated in a rap sheet are not facts relating to the charged criminal activity, such as a victim's statement to the police or a laboratory technician's DNA analysis that implicates the defendant in the charged offense. While the historical data in a rap sheet regarding a defendant's past arrests, convictions, sentences, and periods of imprisonment may include the names of crimes that a defendant was arrested for, convicted of, and sentenced or imprisoned for, they do not communicate facts about the underlying criminal *activity.*

Finally, if CLETS rap sheets were determined to be testimonial hearsay, the results would be absurd. Were *Crawford* to apply to such compilations of information, the hearsay declarants would either have to testify at trial, or be unavailable to testify with defendant's having had the prior opportunity to cross-examine them, in order not to violate defendant's confrontation rights. Rap sheets involve multiple levels of hearsay. For example, an entry documenting a defendant's arrest for robbery may trace its source through the arresting officer who files a police report, to a data entry clerk at the police department who completes a form documenting the arrest and forwards it to DOJ, through a clerk at DOJ who receives the report and enters the information into its computer system. Any CLETS rap sheet, and indeed any one entry or series of entries relating to a single conviction recorded in the rap sheet, may implicate several hearsay declarants. Would each such declarant have to testify (or would the defendant have had the opportunity to cross-examine each unavailable declarant)?[11]

---

[10] Because these statutory requirements contain time limits within which the relevant information must be reported to DOJ, the court determined that the entries were made "at or near the time of the act, condition, or event" as required by Evidence Code section 1280, subdivision (b). (See *People v. Martinez, supra,* 22 Cal.4th at p. 126.)

[11] For some entries, it is difficult even to determine who the hearsay declarant would be. Are the hearsay declarants individuals who saw the defendant arrested, or the officers who

■ These types of official records consisting of computerized compilations of data from multiple agencies are simply not the type of hearsay that the Supreme Court envisioned when it spoke of "testimonial hearsay" in the *Crawford* case. As previously indicated, the *Crawford* opinion excepts business records from testimonial hearsay, saying that they "by their nature [are] not testimonial." (*Crawford, supra,* 541 U.S. at p. 56.) In response to this exception, Chief Justice Rehnquist stated in his dissent, "To its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records. [Citation.] *To hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process.*" (*Crawford, supra,* at p. 76 (dis. opn. of Rehnquist, C. J.), italics added.)[12] Indeed, holding that a rap sheet is testimonial hearsay would lead to just such a result. The issue, if there is one, with the admissibility of such rap sheets is the reliability of the accumulated data regarding defendant's criminal history. Indeed, that is exactly the limited objection made by his attorney below. The California Supreme Court has, however, addressed that issue in *People v. Martinez, supra,* 22 Cal.4th 106 and has decided the issue adversely to defendant.[13]

■ For all these reasons, we conclude the *Taulton* court was correct in holding that CLETS rap sheets are not testimonial hearsay and their admission did not violate defendant's right to confront and cross-examine the witnesses against him under *Crawford, supra,* 541 U.S. 36.

---

physically arrested the defendant; a courtroom employee or spectator who saw the jury return a guilty verdict, or the jurors themselves? Is the hearsay declarant a courtroom employee or spectator who saw the court sentence the defendant to state prison, or the sentencing judge herself? Is the declarant the clerk at the California Department of Corrections and Rehabilitation (CDC) who sent information to DOJ regarding the defendant's acceptance at CDC and his subsequent release dates, or the official who actually did the admission process and the official who authorized defendant's subsequent release? Apparently defendant shares this confusion regarding the identity of the hearsay declarants, as he concludes when arguing that the CLETS rap sheet is testimonial, "its admission *unsupported by testimony from the persons who made the entries or observed the events recorded* violated defendant's rights under the Sixth Amendment." (Italics added.)

[12] We recognize that some information in a business or official record might indeed potentially be testimonial, such as a statement by a victim or witness contained in a police report. Indeed, such hearsay declarants do not have a duty to accurately report information and their statements are not encompassed in the portion of a police report that would be admissible under the business or official records exception to the hearsay rule.

[13] As noted in *Martinez,* the presumption that official duties are regularly performed (Evid. Code, § 604) " 'shifts the burden of proving . . . trustworthiness . . . to the party objecting to the admission of the official writing. [Citation.]' " (*People v. Martinez, supra,* 22 Cal.4th at p. 130.) A defendant may always challenge the trustworthiness of the information contained in a CLETS rap sheet that is introduced into evidence. Additionally, there is a statutory process "for review and correction of the criminal history information . . . designed . . . 'to afford persons concerning whom a record [of criminal history information] is maintained in the files' . . . an opportunity 'to refute any erroneous or inaccurate information . . . .' " (*Id.* at p. 131.)

## DISPOSITION

The judgment is reversed as to count two (receiving stolen property) and the sentence imposed as to that count is vacated. In all other regards, the judgment is affirmed. The trial court shall prepare a modified abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

Ruvolo, P. J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167119. Kennard, J., did not participate therein.