Filed 6/30/15  P. v. Contreras CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B256400 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA103067) |
| v. | |
| ANDREW J. CONTRERAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

David W. Scopp, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jason Tran and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

Andrew J. Contreras appeals from his convictions for being a felon in possession of a firearm and ammunition.  Contreras contends the trial court erred in admitting testimony that the arresting officer read on a motel register that Contreras had rented the room where the gun was found and that a motel clerk directed police to that room.  Contreras argues this testimony was inadmissible hearsay and it violated his confrontation clause rights.  Contreras also contends the trial court erred in imposing a five-year enhancement to his sentence.  We find no error, and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1.     *Police Find a Beretta in the Toilet Tank*

On September 4, 2013 around 1:30 in the afternoon, West Covina Police Officer Abel Hernandez went to the Wayside Inn, a motel of dubious repute.  He and his partner knocked on the door of room 125[1] and defendant  Andrew Contreras opened the door.  A woman named Adriana Rodriguez was in the room with Contreras.  The officers apparently asked Contreras and Rodriguez to have a seat outside the room.  Shortly after 2:00 p.m. West Covina Police Department Detective Eric Melnyk arrived at the Wayside.  Melnyk found a black Samsung flip phone in the room.  Later, at the station, Contreras told detectives the phone was his.

Melnyk scrolled through text messages on the phone and found texts that suggested to him Contreras might have a gun somewhere.  Melnyk and Hernandez searched the room, and Melnyk found a .25 caliber Beretta semi-automatic pistol in a plastic bag in the toilet tank.  The gun was loaded with eight rounds, one in the chamber and seven in the magazine.  When Melnyk examined the gun, he discovered there was something wrong with the extractor.  According to Melnyk, the live round in the chamber would have fired but the gun then would have jammed.

Melnyk arrested Contreras.  Contreras told Melnyk he had been at the motel "just a short time, maybe an hour or so." Authorities found no DNA or fingerprints on the gun.

---

[1]     A housekeeper at the motel testified at trial that the number outside room 125 was "25" because the "1" was missing.

## 2. *The Charges*

The People charged Contreras with violations of Penal Code[2] sections 29800, subdivision (a)(1) (felon in possession of a firearm) and 30305(a)(1)(unlawful possession of ammunition). The People alleged that Contreras had committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang under section 186.22, subdivision (b)(1)(A). The People also alleged that Contreras had a prior conviction for criminal threats, a strike under California's Three Strikes Law, and four prison priors (§ 667.5, subd. (b)). The People alleged a five-year prior under section 667, subdivision (a)(1) as well.

## 3. *Contreras' Motion in Limine and Stipulation to the Legality of the Search of Room 125*

Jury trial began in January 2014. The court bifurcated the trial on Contreras' priors. Contreras' attorney also stipulated that Contreras had a prior felony conviction; thus the jurors would not learn the nature of the conviction. Contreras' counsel then made a motion to exclude evidence that Contreras was on parole at the time, was wearing an ankle bracelet as a parolee, and was found at the motel because of the bracelet:

> "The way they got to where my client was in the motel room is he was wearing an ankle bracelet. He was being monitored. They saw him that he was at a place that he wasn't supposed to be, which is this motel. They asked officers to drive by and check it out, which they did. That's why we are here."

Counsel continued, "I would stipulate they are there legally. In other words, I'll stipulate to any foundational defects that might arise regarding how they got there." The prosecutor responded she did not "necessarily have a problem keeping that out as long as we can form some sort of stipulation with regard to the fact that the officers were there lawfully and conducted a lawful search of the defendant."

---

[2]     All further statutory references are to the Penal Code.

The court then asked the prosecutor if she intended to call a witness to testify "as to perhaps who secured the room, who rented the room," "[m]aybe a motel clerk or manager, someone who could testify from documents that on a certain day in question someone, perhaps Mr. Contreras or someone he was with, actually rented that room to help establish some type of possessory interest to the contents." The prosecutor answered,

> "Yes, I have testimony of one of the officers who went there. He went to the office to locate the room where Mr. Contreras was staying because his parole agent had contacted Detective Melnyk and said based on the GPS Mr. Contreras was at the Wayside Motel. So I would introduce testimony through I believe it's Officer Hernandez that he went to the office, made that inquiry, based on that inquiry he went to room 125 where he contacted Mr. Contreras and I also have text messages on his cell phone asking a female to meet him at the Wayside Motel that day and he gives the room number of 125."

The court asked if the prosecutor had "that type of documentation" she intended to introduce that "Mr. Contreras rented the room per this document on this date in question . . . . " The prosecutor responded she did not have "a hotel clerk that was there," but "it would be an exception to [the] hearsay [rule] to explain the officer's subsequent actions if he goes to the office, inquires of the clerk if there is a room rented to an Andrew Contreras and based on information received from that clerk went to room 125 and that's where he contacted Mr. Contreras."

Defense counsel then said, "Well, the officer's discussion with the manager is obviously hearsay. I had the manager under subpoena. . . . I am still working on the maid. . . . *So I don't think there is going to be a huge foundational issue as to whether or not my client rented the room. There is a receipt.*" (Emphasis added.) The court said, "Okay." Defense counsel continued, "*I have a copy of it. But I'm not handing it over because it's not my job. That's where I'm at on that issue. I'm more than happy to stipulate to everything else that we discussed.*" (Emphasis added.) The court then verified that both counsel were willing to stipulate "that law enforcement in

4

this case, West Covina police, had legal authority to search room no. 125 on the date in question." The prosecutor answered, "That's fine, that they had -- that they were legally entitled to search Mr. Contreras and room 125." The court concluded, "So, essentially, I'm granting your motion, [defense counsel], *to sanitize the parole search issue and to keep that away from the jury because we've agreed to a stipulation*." (Emphasis added.)

The court then asked if there were any other issues and said to the prosecutor, "[Defense counsel] did mention that he would object on hearsay grounds to information that your officer who came on scene received from some type of attendant at the motel to track down the room in which Mr. Contreras was occupying." The prosecutor said, "Right." The court continued, "You're saying it's coming in for a nonhearsay purpose." The prosecutor answered, "Correct. To explain why the officer then went to room 125 and didn't conduct perhaps a door-to-door knock of each motel room to find Mr. Contreras but was directed to where Mr. Contreras was." The court stated,

"I would tend to agree. Essentially overrule an objection for hearsay grounds because even if the information was not true that Mr. Contreras had anything to do with room 125, it would still explain the reason the officer went to that particular room in order to contact the occupants, whether or not that information is true or not. So it's not being really received for the truth of the matter asserted. It's just to help explain why the officer went to that particular room as opposed to any other room within the complex, but not for any other reason. I think we can resolve that issue, it would be nonhearsay evidence."

Defense counsel said he "anticipated the court's ruling" and "submitted."

4. *The Trial*

In his opening statement, defense counsel told the jury, "What happened was my client rented a room, which was called the Wayside Motel. . . . So my client rents what appears to be room 25 because that's what it says on the door. I have the pictures. If they are calling it 125, so be it. It's not an issue. **He did, in fact, rent that room. There**

5

*is no question about that.* (Emphasis added.) But the question is, did he know whether or not this gun that [the prosecutor] has alluded to was in the toilet tank." After discussing the burden of proof and other issues, defense counsel concluded, "I think after you [listen to all the evidence] you're going to find there is more than a reasonable doubt that my client knew and therefore had constructive possession of the .25-caliber weapon, which was inside a toilet tank hidden in a location that is famous for crime and they just can't prove it."

In the jury's presence, the prosecutor and defense counsel stipulated "that the West Covina police officers lawfully responded to the Wayside Motel on September 4, 2013, and conducted lawful searches of the defendant, his property, and room 125."

Officer Hernandez testified at trial that he went to the Wayside Motel that afternoon. This exchange followed:

"Q: When you got to the Wayside Motel, did you go and speak to someone in the front office?

A: Yes, ma'am.

Q: When you spoke to that person in the front office, did you inquire as to whether there were any rooms registered to an Andrew Contreras?

A: Yes, ma'am.

Q: And without telling me what the clerk said, did the clerk respond to you?

A: She did.

Q: And based on the information that you received from the clerk, did you go to a specific room?

A: Yes, ma'am.

Q: What room was that?

A: 125.

Q: Did the clerk direct you to that room?

A: She pointed out where it was.

[Defense counsel:] That's hearsay. Move to strike.

The court: Overruled. She pointed in the direction of the room that he . . .

6

The witness:  Yes, your honor."

Defense counsel did not ask for a limiting instruction on this testimony -- for example, that the motel clerk's pointing to room 125 was being admitted only to explain Hernandez's subsequent conduct -- nor did the court give one.  Hernandez then testified that he and his partner knocked on the door of room 125 and Contreras came to the door.

On cross-examination, defense counsel asked Hernandez these questions:

Q:  . . . [Y]ou go and you talk to the clerk and you ask specifically for a name; right?

A:  Correct.

Q:  And the name is?

A:  Andrew Contreras.

Q:  Okay.  And the clerk then points to a room; is that correct?

A:  Correct.

Q:  That would be room 125?

A:  Yes, sir.

Hernandez also testified on cross-examination that he did not ask the motel clerk for a copy of any registration form that Contreras had signed.  Hernandez said, "I didn't feel there was a need to get a copy after I confirmed who was there."  Defense counsel asked Hernandez whether he had "checked the register" to see who had rented the room before Contreras.  Hernandez answered, "I checked who was registered to that room."  Hernandez conceded on cross-examination that it was "a possibility" that someone had hidden the gun in room 125 before Contreras even got there.

On redirect, the prosecutor asked Hernandez if the motel clerk had "provided" "a copy of the registration" and if he had read it.  Hernandez  said yes.  The prosecutor asked, "And the registration that you reviewed indicated that Mr. Contreras actually . . . rented that room; correct?"  Defense counsel objected as "leading."  The court overruled the objection.  The court then asked the witness, "You reviewed the registration; correct?"  Hernandez said yes.  The court continued, "All right.  Based

7

upon your review, did you determine whether Mr. Contreras rented that room in relation to the day the weapon was found [sic]?" Hernandez answered, "I don't know when. I just knew it was registered to Mr. Contreras." The court asked, "Okay. At the time the weapon was found?" Hernandez said, "Correct."

Detective Melnyk testified at trial both as a percipient witness and as the People's gang expert. Melnyk told the jury that Contreras was a member of the West Covina 13 gang with a moniker of Travieso or "Travie." Melnyk said Contreras had joined the gang when he was 13 or 14 years old. Using Contreras' Samsung phone, Melnyk testified about a number of exchanges of text messages on September 3 and 4 between Contreras and a younger gang member named Javier Vega, whose moniker was Bad Boy. According to Melnyk, the text messages suggested that Contreras was having some difficulty with members of the rival El Monte Flores gang. Contreras texted Vega, "I need to borrow that cuete you got." Melnyk testified "cuete" was a slang Spanish word for firearm. Vega texted back, " '[W]here you at.' " Contreras texted, " 'At the Wayside Inn.' " Vega responded, " 'All right. I'm headed over there.' "

In closing, the prosecutor argued, "I don't think there is going to be an issue about whether [Contreras] possessed [the gun]. It's in the hotel room that he's registered to. . . . It's in his hotel room." Defense counsel told the jury Contreras "obviously was desperate" as the text messages showed but there was no evidence that Vega ever even arrived at the Wayside Motel or that he had a gun. Counsel argued that officers did not bother to get a copy of the motel guest register or to determine how long Contreras had been in the room. Counsel said Contreras could have been in the room only ten minutes. Counsel told the jury, "That gun could have been in that tank for a month. We don't know." Counsel argued that -- even though the gun did not have to be in working order for the crime to be committed[3] -- that the gun had a jammed extractor was inconsistent with the People's theory that Contreras called a fellow gang

---

[3]     See CALCRIM 2511.

member to bring him a gun to defend himself against rival gang members: "Why if you're a big gang and you have pass-around weapons would you have a weapon that didn't work when you knew a fellow gang member was in a serious situation. The answer is you wouldn't; therefore, that gun did not belong to my client. My client never admitted it belonged to him."

In rebuttal, the prosecutor argued that Officer Hernandez did "look[] at" the register -- even though he did not get a copy -- and "it said Mr. Hernandez [sic] checked into room 125. Confirmed it with the clerk."[4]

5.      *The Verdict and Sentencing*

The jury convicted Contreras on both counts and found the gang allegation true. Contreras waived jury on his priors trial and the court conducted a bench trial on the priors. The court sentenced Contreras to 12 years in the state prison, calculated as the upper term of three years on the felon in possession of a gun count, doubled because of the strike prior, plus one one-year prison prior under section 667.5, subdivision (b), plus a five-year prior under section 667, subdivision (a)(1). The court imposed and stayed the upper term of four years on the gang enhancement and struck the remaining three one-year prison priors.

## APPELLANT'S CONTENTIONS

Contreras contends Officer Hernandez's testimony that the motel clerk directed him to room 125 when he asked about Contreras and that he saw Contreras' name on the motel register for that room was inadmissible hearsay. Contreras argues the trial court violated his confrontation clause rights by admitting that testimony and his trial attorney was constitutionally ineffective for failing to object to the testimony. Contreras also contends the trial court incorrectly imposed the five-year enhancement under section 667, subdivision (a).

---

[4]      The prosecutor later corrected herself: "If I said Hernandez before I apologize. It's Mr. Contreras checked into that room."

## DISCUSSION

1. *Contreras's Trial Counsel Conceded Contreras Had Rented Room 125, and We Will Not Second-Guess that Apparently Sound Strategic Decision*

The trial court stated it was admitting Officer Hernandez's testimony that the motel clerk directed him to room 125 when he asked about Contreras not for its truth but to explain "why the officer went to that particular room." The court overruled defense counsel's hearsay objection. Defense counsel did not request -- nor did the court give -- a limiting instruction. Hernandez also testified that the motel clerk had shown him a copy of the registration and it indicated Contreras had rented the room. Defense counsel objected solely on the ground that the prosecutor's question was leading, and the court overruled the objection.

Even assuming the trial court admitted Hernandez's testimony about the motel clerk "pointing out" where the room was for its truth and that it therefore was hearsay, Contreras has shown no error. First, through his attorney Contreras stipulated that police legally searched him *and* room 125. Implicit in this stipulation is an acknowledgment that Contreras had something to do with room 125. Contreras proposed and entered into this stipulation so the jury would not find out that he was on parole, that he had search conditions as a parolee, that his ankle bracelet notified his parole officer he was at the Wayside, and that his parole officer then called West Covina police to go to the motel and look for Contreras. Second, defense counsel himself told the jurors in his opening statement that there was "no question" that Contreras had in fact rented that room. On cross-examination, defense counsel himself elicited testimony from Hernandez that the motel clerk pointed to room 125 when he asked for Contreras. Plainly, Contreras' trial counsel fashioned his defense on the theory that the motel was a marginal place frequented by unsavory characters who rented rooms on an hourly basis, that anyone could have put the gun in the toilet tank at any time, and that there was no evidence Contreras even knew it was there. Counsel elicited testimony that, even though the gun and ammunition were tested for fingerprints and DNA, none were

10

found. Counsel essentially criticized Hernandez for not checking the register to see who had rented room 125 before Contreras. Defense counsel elicited -- without objection -- hearsay testimony by Detective Melnyk that Contreras had told him he had been at the motel "just a short time, maybe an hour or so." Counsel subpoenaed and presented as a witness the motel maid, who testified that she had not cleaned room 125 before the police came to the Wayside that day and that she routinely did not look into toilet tanks when she cleaned rooms.[5]

This strategic decision by defense counsel appears sound. Had he not entered into the stipulation and had he not conceded that Contreras had rented room 125, the prosecution could have presented evidence that Contreras was on parole and that his anklet alerted authorities that he was at the motel -- a place he was not supposed to be. Officer Hernandez simply could have testified that he knocked on the door of room 125 -- without explaining how he got there -- and that Contreras opened the door. This is not a case in which the gun was found in a room registered to Contreras but Contreras was not there, and the only evidence linking Contreras to the room was the hearsay statement -- or gesture -- of the clerk and the motel register. Contreras was *in the room* when police arrived. Moreover, the jury would in any event have heard Melnyk's testimony that Contreras admitted the phone police found in room 125 was his and that

---

[5]     On the second day of trial, a witness named Ramesh Godhasara appeared in court with defense counsel, apparently in response to a defense subpoena. Godhasara seemed to be some sort of manager at the motel. Godhasara told the court he did not speak much English and his native language was Gujaradi. Defense counsel told the court his investigator had interviewed Godhasara and he had given a copy of the witness's statement to the prosecutor. Counsel said the motel had changed hands in August 2013, he had not been able to get any information from the new owner, and Godhasara "basically had very little information." Counsel told the court he was going to call Godhasara "only . . . for a couple of questions," and then he was going to call the maid "just to say that it is not normal for them to check the toilet tanks in the rooms unless there is some specific reason to do so." The court ordered Godhasara to return the next day  but defense counsel presumably decided the maid's testimony was sufficient.

Contreras had texted Vega that he was at the Wayside Motel.[6]  In short, any claim by Contreras' lawyer that his client had nothing to do with room 125 would have cost him credibility with the jury.

An appellant who claims his trial counsel's assistance was so defective as to require reversal of a conviction must show (1) that counsel's representation was inadequate, and (2) that there is a reasonable probability that the result would have been more favorable absent counsel's deficiencies.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Marquez* (1992) 1 Cal.4th 553, 574-575.)  Contreras has shown neither here.  Reviewing courts " 'presume that counsel rendered adequate assistance and exercised reasonable professional judgment in making significant trial decisions.' " (*People v. Prieto* (2003) 30 Cal.4th 226, 261 (*Prieto*); *People v. Holt* (1997) 15 Cal.4th 619, 703.  Cf. *Cullen v. Pinholster* (2011) __U.S.__, 131 S.Ct. 1388, 1404, 1407 [reviewing court "begin[s] with the premise that 'under the circumstances, the challenged action [] might be considered sound trial strategy' " and "affirmatively entertain[s] the range of possible 'reasons . . . counsel may have had for proceeding as they did' "].)

In sum, under any applicable standard, any error in admitting evidence that Contreras had rented room 125 was not prejudicial.  (Compare *People v. Watson* (1956) 46 Cal.2d 818 with *Chapman v. California* (1967) 386 U.S. 18.)

2.    *The Trial Court Did Not Violate Contreras' Confrontation Clause Rights Because Neither the Motel Register nor the Motel Clerk's Statement to Police that Contreras Was in Room 125 Was Testimonial*

As noted, defense counsel did not object on hearsay or confrontation clause grounds to Hernandez's testimony that the motel register showed Contreras had rented room 125.  Counsel did object to Hernandez's testimony that the clerk directed him to

---

[6]      As noted, the prosecutor told the court during the pretrial motion hearing that in a text message to a woman Contreras gave the room number 125 at the Wayside.  It may be that Melnyk did not testify to this particular text because defense counsel already had admitted in his opening statement there was "no question" Contreras had rented that room.

that room, but -- both before and after that objection -- conceded Contreras' relationship with room 125. As discussed, there appear to be sound strategic reasons for counsel's decisions. In any event, any objection to this evidence based on the confrontation clause would have been meritless. Counsel therefore was not constitutionally ineffective for failing to make those objections. "[C]ounsel's decision to forgo implausible arguments or objections does not constitute deficient performance." (*Prieto, supra,* 30 Cal.4th at p. 261; see also *People v. Ochoa* (1998) 19 Cal.4th 353, 435.)

The motel's guest register is not testimonial within the meaning of *Crawford v. Washington* (2004) 541 U.S. 36, 56 (*Crawford*) [business records are not "testimonial"]. Motels keep records of guests for billing purposes and other business reasons, not to provide evidence for the police. "The fact that such records may, at times, become relevant evidence in a criminal trial, or even that such future use may be foreseeable, does not change the purpose for which the records were prepared." (*People v. Taulton* (2005) 129 Cal.App.4th 1218, 1224.)

Nor was the motel clerk's statement or gesture that Contreras was in room 125 "testimonial." At that juncture, police were not investigating Contreras for possession of a gun or ammunition. (Cf. *People v. Blacksher* (2011) 52 Cal.4th 769, 812 (*Blacksher*) [" 'police interrogation' " traditionally means " ' "interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator" ' "].) Instead, they were looking for a parolee who appeared to be somewhere -- as his lawyer put it -- "he wasn't supposed to be." When the primary purpose of police questioning is to aid police in meeting an ongoing emergency that may pose a threat to public safety, statements in response to those questions are not "testimonial" under *Crawford*. (*Michigan v. Bryant* (2011) 562 U.S. __, 131 S.Ct. 1143; *Blacksher, supra,* 52 Cal.4th at p. 816 [primary purpose of police questions and victim's statements was to locate shooter at large, "not to create an out-of-court substitute for trial testimony"]; *People v. Romero* (2008) 44 Cal.4th 386.) Here, Officer Hernandez was searching for a parolee at large. The motel clerk's

indication to officers that Contreras was in room 125 was not testimonial and therefore the admission even of hearsay evidence did not violate Contreras' confrontation clause rights.

3. *The Trial Court Correctly Imposed the Five-Year Enhancement*

As noted, the jury found the gang allegation true and the trial court found -- at the conclusion of the priors trial -- that Contreras had a prior strike conviction. Accordingly, the court imposed a five-year enhancement to Contreras' sentence under section 667, subdivision (a).

Contreras' challenge to the imposition of the five-year prior borders on the unintelligible. Contreras seems to argue that, because his prior strike conviction for criminal threats was not "gang-related," his current conviction for being a felon with a gun, with a true gang enhancement, is not a "serious felony" under the Three Strikes Law. Contreras is mistaken.

The trial court found Contreras had suffered a conviction in Case No. KA095221 for criminal threats in violation of section 422. That conviction is a strike. (§ 1192.7, subd. (c)(38).) The jury found the gang allegation true in this case. That finding makes Contreras' violation of section 29800, subdivision (a)(1) a serious felony under the Three Strikes Law. (§ 1192.7, subd. (c)(28).) If the current crime is a serious felony and the prior strike is a serious felony, the court must impose the enhancement under section 667, subdivision (a) in addition to any three strikes consequences. (*People v. Turner* (1998) 67 Cal.App.4th 1258, 1269.)

Contreras takes out of context language in *People v. Briceno* (2004) 34 Cal.4th 451 (*Briceno*). The question there was whether section 1192.7, subdivision (c)(28)'s definition of a "serious" felony as "any felony offense, which would also constitute a felony violation of Section 186.22" applied only to the substantive offense of active participation in a criminal street gang under section 186.22, subdivision (a), or whether it also applied to any felony offense committed for the benefit of a gang under section 186.22, subdivision (b)(1). The Court held the latter construction to be the correct one.

14

A jury convicted Briceno of several robberies and found a gang allegation true. Briceno had prior convictions for unlawful firearm possession, also with a true gang allegation. The Court concluded that Briceno's prior conviction -- with the gang allegation -- was a serious felony under section 1192.7, subdivision (c)(28). The Court stated, "Section 1192.7, subdivision (c), . . . comes into play only if the defendant reoffends, at which time any *prior* felony that is gang related is deemed a serious felony. Thus, any felony that is gang related is not treated as a serious felony in the current proceeding, giving effect to section 186.22(b)(1)(A)." (*Briceno, supra,* 34 Cal.4th at p. 465.)

So in *Briceno* -- unlike in this case -- the prior strike was a strike only because of the gang allegation. Here, criminal threats is a strike whether or not committed for a gang's benefit. As the court explained in *People v. Bautista* (2005) 125 Cal.App.4th 646, the essential holding of *Briceno* is that a court cannot use a gang enhancement to impose both a five-year enhancement under section 667, subdivision (a) and a five-year enhancement under section 186.22, subdivision (b)(1)(B): that would be "impermissible bootstrapping." (*Briceno, supra,* 34 Cal.4th at p. 465.) The trial court here was careful to avoid any bootstrapping. The court imposed the upper term of four years under section 186.22, subdivision (b)(1)(A) -- which applies to gang crimes that are neither violent nor serious -- not the five years under section 186.22, subdivision (b)(1)(B). And, even though it could have imposed both the five-year prior under section 667, subdivision (a) and the four-year enhancement under section 186.22, subdivision (b)(1)(A) (*People v. Martinez* (2005) 132 Cal.App.4th 531, 537), the court stayed the four-year punishment for the gang enhancement. Contreras has shown no sentencing error.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

EGERTON, J.*

WE CONCUR:

EDMON, P. J.

ALDRICH, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.