[No. B212994. Second Dist., Div. Eight. May 10, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID LAM, Defendant and Appellant.

## COUNSEL

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUBIN, J.**—David Lam appeals from the trial court's judgment following his conviction for second degree murder of his wife. We affirm.

### FACTS AND PROCEEDINGS

To pay his gambling losses, appellant David Lam stole $20,000 from his wife, Susan. When police arrested him for murdering his wife, he told officers that his shame from stealing from her moved him to kill her and then to kill himself, but he faltered in his resolve to commit suicide. He told police that upon arriving home drunk and despondent from escalating gambling losses, he found Susan sitting on the couch watching television. Approaching her from behind, he removed his necktie, looped it around her neck, and pulled tight. After a brief struggle, Susan died, and appellant buried her body in their backyard.

Susan's unexplained disappearance worried her family. They called police, who investigated her whereabouts. As suspicion turned toward appellant and foul play, he fled overseas. Two years later, American authorities arrested appellant and returned him to the United States for trial. A jury convicted him of second degree murder. This appeal followed.

## DISCUSSION

### A. *Aiding and Abetting Suicide*

■ Appellant contends defense counsel provided ineffective assistance of counsel by not requesting a jury instruction on aiding and abetting suicide as a lesser related offense to murder. (See *People v. Cleaves* (1991) 229 Cal.App.3d 367, 371, 374–376 [280 Cal.Rptr. 146] [consideration of aiding and abetting suicide as lesser related offense].) Before addressing the evidentiary insufficiency of appellant's contention, we note some general principles involving lesser related offenses. First, a trial court has no sua sponte duty to instruct on lesser related offenses. (*People v. Carrera* (1989) 49 Cal.3d 291, 310 [261 Cal.Rptr. 348, 777 P.2d 121]; *People v. Butler* (1996) 43 Cal.App.4th 1224, 1246 [51 Cal.Rptr.2d 150].) Second, the law does not obligate a trial court to grant a defendant's request for a lesser related offense instruction even if substantial evidence supports the instruction. (*People v. Kraft* (2000) 23 Cal.4th 978, 1064 [99 Cal.Rptr.2d 1, 5 P.3d 68].) Third, a court errs if it instructs on a lesser related offense over the prosecutor's objection. (*People v. Valentine* (2006) 143 Cal.App.4th 1383, 1387 [49 Cal.Rptr.3d 948].) From these principles, it follows that under the appropriate circumstances a court may choose to grant a defendant's request for a lesser related instruction if substantial evidence supports the instruction and the prosecutor consents.

Here, defense counsel did not request an aiding and abetting suicide instruction, and thus the record is silent as to whether the prosecutor would have consented to it. But even if counsel had requested the instruction, no reasonable possibility existed that the prosecutor and trial court would have agreed to it because no substantial evidence supported it. (*In re Lucas* (2004) 33 Cal.4th 682, 721 [16 Cal.Rptr.3d 331, 94 P.3d 477] [ineffective assistance of counsel requires, among other things, different outcome but for counsel's decision].) Appellant's trial testimony described Susan's death differently from his description to police following his arrest. He testified that the day of her death, he returned home to find her crying from her discovery that he had stolen her money. According to him, she suggested mutual suicide. Accepting her proposal, appellant placed a necktie around Susan's neck, she put one

around his, and they pulled simultaneously. Appellant briefly passed out. When he regained consciousness, Susan was dead. Penal Code section 401 states: "Every person who deliberately aids, or advises, or encourages another to commit suicide, is guilty of a felony." Because there was evidence that he and Susan had formed a mutual suicide pact, appellant contends his trial testimony supported a jury instruction charging him with aiding and abetting Susan's suicide as a lesser related offense to murder. (See *In re Joseph G.* (1983) 34 Cal.3d 429, 437–439 [194 Cal.Rptr. 163, 667 P.2d 1176] [allowing that mutual suicide pact may "in essence" be a "double attempted suicide" rather than a "murder-suicide"].)

■ We hold that even if one accepts appellant's characterization of Susan's demise as a mutual suicide pact that he happened to survive, the aiding and abetting instruction did not apply. The instruction is inapplicable because appellant actively participated in the final overt act that could have caused only Susan's death: pulling the tie he had placed around her neck. (*In re Joseph G., supra,* 34 Cal.3d at p. 436; *People v. Matlock* (1959) 51 Cal.2d 682, 694 [336 P.2d 505].) ■ "[T]he key to distinguishing between the crimes of murder and of assisting suicide is the active or passive role of the defendant in the suicide. If the defendant merely furnishes the means, he is guilty of aiding a suicide; if he actively participates in the death of the suicide victim, he is guilty of murder." (*In re Joseph G.,* at p. 436.) Thus, a defendant who, for example, supplies a gun knowing the decedent intends to kill himself aids a suicide, but the defendant commits murder if, even at the decedent's request, he pulls the trigger. (*Ibid.*) As the Supreme Court held in *People v. Matlock*: "[W]here a person actually performs, or actively assists in performing, the overt act resulting in death, such as shooting or stabbing the victim, administering the poison, or holding one under water until death takes place by drowning, his act constitutes murder, and it is wholly immaterial whether this act is committed pursuant to an agreement with the victim, such as a mutual suicide pact." (*People v. Matlock, supra,* at p. 694.)

■ Appellant contends *In re Joseph G., supra,* 34 Cal.3d 429 creates an exception for suicide pacts involving a "single instrumentality" that appellant asserts ought to apply here. We disagree. Ordinarily, a surviving defendant who kills his victim at his victim's invitation commits murder even if the defendant intended to commit suicide in conjunction with the victim's death. (*Id.* at p. 436.) *Joseph G.* allows the surviving defendant in a half-completed murder-suicide pact to escape liability for murder, however, if the means of death was a "single instrumentality" that created an equal risk of death for both the victim and defendant. In *Joseph G.,* the defendant and his friend

agreed to kill themselves by driving over a cliff with the defendant at the wheel and the friend in the passenger seat. (*Id.* at p. 432.) The defendant survived the crash, but his friend died. Because the defendant committed the last overt act of driving over the cliff leading to his friend's death, the defendant was arguably guilty of murder despite the friend's being a willing passenger on the road to mutual self-destruction. (*Id.* at p. 431.) Our Supreme Court held, however, that the "unusual circumstances" in *Joseph G.* supported no conviction greater than aiding and abetting suicide because the means of death—driving over a cliff in the same car—posed the same mortal risk to the driver and passenger. The Supreme Court used the shorthand of joint suicides "undertaken simultaneously by a single instrumentality" to summarize the principle it articulated in *Joseph G.* (*Id.* at p. 440.)

Relying on *In re Joseph G.*, appellant asserts his wife's death arose from a suicide pact in which they faced an equal risk of death from simultaneous necktie strangulation. We find *Joseph G.* is distinguishable because appellant and his wife did not face an equal risk of death from a single instrumentality. The neckties they placed around their necks were separate instruments under their independent control. Appellant and Susan could to a greater or lesser degree choose to bear down on or release each other in their mutual strangulation, and that is apparently what happened. Thus appellant and Susan differed from the driver and passenger in *Joseph G.* whose plummet over the cliff in one car simultaneously hurled them beyond a point of no return to an equal risk of death. Accordingly, the "single instrumentality" exception under *Joseph G.* did not entitle appellant to an instruction on aiding and abetting suicide.

B. *Voluntary Intoxication Instruction*

The trial court instructed the jury with form instruction CALCRIM No. 625 on the effect of appellant's voluntary intoxication on his ability to harbor express malice in forming the intent needed to commit first degree murder. The court did not, however, offer a similar limiting instruction for implied malice supporting the charge of second degree murder against appellant. Appellant acknowledges various Courts of Appeal have held a voluntary intoxication instruction does not apply to negate implied malice. (See *People v. Timms* (2007) 151 Cal.App.4th 1292, 1298 [60 Cal.Rptr.3d 677]; *People v. Martin* (2000) 78 Cal.App.4th 1107, 1115–1117 [93 Cal.Rptr.2d 433].) We find those decisions well reasoned and decline appellant's invitation to reject them.

## DISPOSITION

The judgment is affirmed.

Bigelow, P. J., and Grimes, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 18, 2010, S183451.