Filed 11/26/13  P. v. Chavez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055599 |
| v. | (Super.Ct.No. FSB704845) |
| ROBERT RICHARD CHAVEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Richard V. Peel, Judge.  Affirmed with directions.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina, Annie Featherman Fraser, and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendant Robert Chavez appeals from his conviction of premeditated attempted murder (Pen. Code,[1] §§ 664, subd. (a), 187, subd. (a)), with true findings on associated enhancement allegations (§§ 12022.53, subds. (b)-(d), 186.22, subd. (b)(1)(C), 1170.12, subds. (a)-(d), 667, subds. (b)-(i), 667.5, subd. (b)). Defendant contends: (1) the evidence was insufficient to show an intent to kill; (2) he was denied due process by the testimony of a prosecution expert, who invaded the province of the jury; (3) he was denied due process by the lack of proper instruction on provocation sufficient to negate premeditation; (4) he was denied his right to effective assistance of counsel at the court trial on prior conviction allegations when evidence was admitted without foundation; (5) admission of a California Law Enforcement Telecommunications System (CLETS) printout to establish his prior conviction violated the confrontation clause; and (6) he is entitled to additional custody and conduct credits. The People properly concede that defendant's custody credits were incorrectly calculated. We find no other errors.

## II. FACTS AND PROCEDURAL BACKGROUND

In October 2006, Rudy Ramos, a member of the Northside Colton gang, shot and killed defendant's son, Robert Chavez, Jr., and another man. Defendant was a member of the Verdugo Flats gang, a rival of Northside Colton.

In November 2007, defendant was attending a class in the Substance Abuse Treatment and Recovery (STAR) program at the San Bernardino County parole office.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Michael Encinas, also a member of Verdugo Flat, Shawn Smith, a member of a Los Angeles gang, and Jason Martinez, a member of Northside Colton, also attended the class. During a lunch break, defendant, Encinas, Smith, and Martinez left to drink alcohol and smoke marijuana. Defendant drove the group to Pear Street, a cul-de-sac in the heart of Verdugo Flats territory. Defendant parked and told the men to get out so the car would not "smell like weed." Defendant got out of the driver's seat, said, "'Fuck Northside Colton,'" and pointed a gun at Martinez, who had just exited the car from the rear passenger side. Martinez said he had had nothing to do with it, and "'I'm a father.'" Defendant responded, "'I'm a father too.'"

Defendant fired about seven shots at Martinez, who tried to dodge, duck, and hide behind the car. Martinez was shot in the leg and the hip, and at least one bullet hit the car. Martinez was hospitalized for about a week. He had a metal rod placed in his leg, and he continued to limp.. He testified that he fell after being shot, and "it would have been easy" for the shooter to go around the car and shoot him again.

At trial, Martinez testified he did not remember who had shot him, but it was not defendant. Martinez had previously identified a photograph of defendant as that of the shooter.

Smith and Encinas ran away. Defendant did not return to the STAR program that day.

At the scene, police officers found seven casings from a .380-caliber handgun; an expert witness testified such a gun holds between six and 10 bullets.

3

The jury found defendant guilty of premeditated attempted murder (§§ 664, subd. (a), 187, subd. (a)) and found true associated enhancement allegations (§§ 12022.53, subds. (b)-(d), 186.22, subd. (b)(1)(C)). The trial court found true the allegations of a strike prior and three prison term priors. (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i), 667.5, subd. (b).)

The trial court sentenced defendant to 14 years to life for the attempted murder, a consecutive term of 25 years to life for the gun use enhancement (§ 12022.53, subd. (d)), a consecutive term of 10 years for the gang enhancement (§ 186.22, subd. (b)(1)(C)), and a consecutive one-year term for each of the three prison priors (§ 667.5, subd. (b)).

Other facts are set forth in the discussion of the issues to which they pertain.

III. DISCUSSION

**A. Sufficiency of Evidence of Intent to Kill**

Defendant contends the evidence was insufficient to show an intent to kill. He argues he could have killed Martinez if he wanted to, and the fact he did not demonstrates he lacked the intent to do so.

*1. Standard of Review*

When a defendant challenges the sufficiency of the evidence to support his conviction, "[o]ur task is clear. 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial

4

evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]" [Citations.]' The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

### 2. Analysis

Defendant was convicted of attempted murder, which requires a specific intent to kill. (*People v. Houston* (2012) 54 Cal.4th 1186, 1217.) "The act of shooting a firearm toward a victim at close range in a manner that could have inflicted a mortal wound had the shot been on target is sufficient to support an inference of intent to kill." (*Ibid.*) Moreover, "evidence of motive is often probative of intent to kill," and the defendant's intent "may in many cases be inferred from the defendant's acts and the circumstances of the crime." (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

In *People v. Lashley* (1991) 1 Cal.App.4th 938, the defendant argued the evidence was insufficient to show an intent to kill because "had he truly intended to kill [the victim] he would have fired more than one shot at his target or taken some other action to insure the accuracy of his aim." (*Id.* at p. 945.) The court soundly rejected that

5

argument: "The question of defendant's intent at the time of the shooting was a factual issue that the trial court determined adversely to him. The only possible reason for reaching a different result here rests on the untenable theory that an unsuccessful killing constitutes conclusive evidence of lack of intent. There is nothing inherently illogical or absurd in a finding that a person who unsuccessfully attempted to kill another did so with the intent to kill. The fact that the shooter may have fired only once and then abandoned his efforts out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance. Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily establish a less culpable state of mind." (*Ibid.*) The evidence of intent in the present case is even more compelling than that in *Lashley*: defendant fired not just one but up to seven shots at close range; two of those shots actually hit Martinez, and at least one struck the car that was between defendant and Martinez.

Defendant also argues his acts were too equivocal to constitute an attempt, citing *People v. Miller* (1935) 2 Cal.2d 527, 532, in which the Supreme Court reversed an attempted murder conviction because the defendant's use of a rifle was too equivocal to constitute an attempt. *Miller* is easily distinguishable. In that case, the defendant, carrying a .22-caliber rifle, entered a field where the victim was working. When he was about 130 yards from the victim, the defendant appeared to load the rifle. However, he never lifted the rifle as though to take aim, and the purported victim fled. The defendant did not fire any shots. (*Id.* at p. 529.) Here, in contrast, defendant not only pointed his handgun at the victim, but he also fired multiple shots and actually struck the victim with

6

two shots.  Defendant's acts, in contrast to those of the defendant in *Miller*, were not in the least equivocal.  Thus, *Miller* is not helpful to defendant's position.

Defendant asserts that his shots struck Martinez only "on or near his lower extremities and not in close proximity to a vital organ," and Martinez testified the shooter could easily have killed him after he was rendered helpless by the shot to his leg. Defendant argues the above was "definitive circumstantial evidence of the lack of an intent to kill."  However, one of the shots in fact struck Martinez in the hip, thus in the central mass of his body, not merely in his "lower extremit[y]."  Moreover, defendant had a motive to kill Martinez:  Martinez was a member of the rival gang that had killed defendant's son.  The jury could properly consider that evidence of motive as probative of defendant's intent to kill.  (*People v. Smith*, *supra*, 37 Cal.4th at p. 741.)  Considering all the circumstances in the light most favorable to the verdict, we conclude abundant evidence supported the jury's finding that defendant intended to kill Martinez.

## B.  Testimony of Prosecution Expert

Defendant contends he was denied due process by the testimony of a prosecution expert who invaded the province of the jury by testifying to the veracity of two witnesses and to ultimate issues of fact, and who did not testify in form of responses to hypothetical questions.

### 1.  Forfeiture

The People contend that defendant has forfeited his challenges to the admissibility of the expert testimony because his counsel failed to raise timely and specific objections in the trial court.  (*People v. Kelly* (2007) 42 Cal.4th 763, 793; *People v. Burgener* (2003)

7

29 Cal.4th 833, 869; Evid. Code, § 353, subd. (a).) We agree. However, defendant also contends his trial counsel provided ineffective assistance by failing to raise appropriate objections. We will therefore address the issue on that basis.

To establish a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance fell below an objective standard of reasonableness and that in the absence of counsel's deficiencies, a more favorable result was reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) If a defendant fails to establish either of the two prongs, we must uphold the conviction. (*Id.* at p. 687.) In assessing the adequacy of counsel's performance, we give great deference to counsel's tactical decisions, and we do not reverse for ineffective assistance unless "'there could be no conceivable reason for counsel's acts or omissions.'" (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.) "As a general rule, failure to object to specific items of evidence 'involves tactical decisions on counsel's part and seldom establishes counsel's incompetence. [Citation.]' [Citation.]" (*People v. Johnson* (1993) 6 Cal.4th 1, 35, overruled on another ground by *People v. Rogers* (2006) 39 Cal.4th 836, 879.)

### 2. *Failure to Ask Questions in Form of Hypotheticals*

#### (a) Additional background

Before trial, the prosecutor requested leave of court for San Bernardino Police Officer Francisco Hernandez, the prosecution's gang expert, to remain in court. The trial court granted the request without opposition by defense counsel.

The prosecutor asked Officer Hernandez why it was significant that Martinez had been shot on Pear Street. The officer responded that it was in the heart of Verdugo Flats

8

gang territory; Verdugo Flats gang members lived in the area; and "word would get out," leading to greater respect. The prosecutor asked why it was significant that Pear Street was a cul-de-sac. The officer responded there was no exit or easy escape route, and taking someone there to shoot him would be a "display of status." The prosecutor asked if it was significant that the shooting had been done in front of Encinas, another Verdugo Flats gang member. The officer responded that defendant's action would increase respect within his own gang, and Encinas would "let his partners know this happened." The prosecutor asked if it was significant that defendant had said "'Fuck Northside Colton. This is Verdugo Flats,'" before the shooting. The officer responded, "It's obvious that he's acknowledging knowledge of the other gang member[']s gang affiliation. It's common among Spanish gang members, especially those like parolees when they meet each other and shake hands. They identify themselves on the pictures. They don't have to hide their affiliation. They will shake hands and say I'm Flakito [defendant's gang moniker] from the Flats. I'm here from this. This is who I am. This is where I'm from. By shouting that out, he's acknowledging he knows who this guy is and he's not saying, you know, 'Fuck you, Jason Martinez.' He's saying this to a whole gang. Northside Colton is his target. Jason Martinez is not the person who shot his son. Rudy Ramos shot his son. Jason Martinez was not there the night his son was shot. Mr. Chavez— Jason Martinez wasn't his sole target. Northside Colton was his target and he announced it by saying 'Fuck Northside Colton.'" Counsel did not object to the form of the prosecutor's questions.

9

(b) Analysis

Defendant argues that presentation of expert testimony outside the framework of hypothetical questions was a "direct violation of well-settled . . . constitutional law . . . ." In a related argument, defendant also contends that Officer Hernandez's testimony was improper because it embraced the ultimate issues of fact and "attempt[ed] to direct the jury how to vote in their deliberations." "'A witness may not express an opinion on a defendant's guilt. [Citations.]'" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048 (*Vang*).)

Contrary to defendant's argument, however, the issue whether experts must testify in the form of hypotheticals is not settled, nor do we view the failure to do so as a constitutional violation. The cases defendant cites merely state the unexceptional proposition that one accepted method of introducing expert opinion testimony is through the use of hypotheticals that mirror the facts of the case; however, those cases do not hold that other forms of presenting expert testimony are unconstitutional. (See, e.g., *People v. Gardeley* (1996) 14 Cal.4th 605, 618 ["Generally, an expert *may* render opinion testimony on the basis of facts given 'in a hypothetical question that asks the expert to assume their truth.'"] (Italics added); *Vang*, *supra*, 52 Cal.4th at p. 1049 [holding that the trial court did not err in permitting an expert witness to testify in the form of hypotheticals that closely tracked the evidence].)

In *Vang*, the court acknowledged "that in some circumstances, expert testimony regarding the specific defendants might be proper," although it did not reach that issue because it was not then before the court. (*Vang*, *supra*, 52 Cal.4th at p. 1048, fn. 4.) In *People v. Valdez* (1997) 58 Cal.App.4th 494, the court found no error in an expert

10

witness's testimony that the defendant acted for the benefit of the particular gang.  The *Valdez* court explained: "'There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case.' [Citations.]  '"[T]he true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved . . . ."'" (*Id.* at p. 507.)  *Valdez* was cited with approval in *People v. Prince* (2007) 40 Cal.4th 1179, 1227.

Although defendant argues trial counsel's failure to object to Officer Hernandez's testimony could not reasonably be justified as a tactical decision, we disagree.  Trial counsel could reasonably have concluded that raising objections to the form of the questions would merely have led to a rephrasing of the questions in hypothetical format, and essentially the same evidence would inevitably have been introduced.  In *People v. Castaneda* (2011) 51 Cal.4th 1292, the court stated, "The decision whether to object to the admission of evidence is 'inherently tactical,' and a failure to object will rarely reflect deficient performance by counsel.  [Citation.]  Because the evidence was admissible to rebut defendant's good character evidence, counsel may reasonably have decided to avoid drawing further attention to defendant's escapes with objections to brief references to the escapes in other contexts.  Although counsel could have objected outside the presence of the jury to the references in the probation officers' reports, any oversight in failing to do so could not have affected the outcome, in light of the admissibility of the same evidence in other contexts." (*Id.* at p. 1335, fn. omitted.)  Here, likewise, we conclude defense counsel did not provide ineffective assistance in failing to object to the form of the prosecutor's questions.

11

### 3. Vouching for Credibility of Witnesses

#### (a) Additional background

The prosecutor asked Officer Hernandez, "In your experience, is it common for victims of crime who are gang members to refuse to testify truthfully in court?" The officer replied, "Yes." He explained: "As I said before, respect is everything, and as a gang member if you are letting law enforcement handle what happened to you, you are going to lose respect. You are snitching. You are a snitch. All three witnesses gave very similar statements. Two witnesses got up here. One stayed true and is honest. He has lost all respect now. As he said, he's probably going to get shot. Another one got up here and remembered most of the details of his report, but not remember [*sic*] anything that had to do with who shot him. However he remembered the street, what kind of houses [were] on the street, the houses, cottage style, also apartments on the street, the cul-de-sac, people's position in the car. However, he would not remember who shot him. If the person who does remember everything tells the truth, loses all respect [*sic*]. Now he's a snitch. The victim was up here trying to almost take back his original statement to fix the tag of being a snitch to try to take that off him." Counsel did not object on the ground of improper vouching.

#### (b) Analysis

An expert witness may not give an opinion as to whether a particular witness is telling the truth "because the determination of credibility is not a subject sufficiently beyond common experience that the expert's opinion would assist the trier of fact." (*People v. Long* (2005) 126 Cal.App.4th 865, 871; see also *People v. Coffman and*

12

*Marlow* (2004) 34 Cal.4th 1, 77 ["A witness may not express an opinion on a defendant's guilt"].)

In *People v. Gonzalez* (2006) 38 Cal.4th 932, the prosecutor as a gang expert witness whether he "ha[d] an opinion as to whether or not there would be intimidation against the gang member who was called to testify by his own gang as well as any other gang.'" (*Id.* at p. 945.) The trial court overruled a defense objection, and the witness responded, "'Definitely.'" The witness further testified that both the witness's own gang and rival gangs would do the intimidating, that a member of the specific gang at issue "'would be in great jeopardy'" if he testified against a fellow gang member. (*Ibid.*) Our Supreme Court found no abuse of discretion in the admission of such testimony. The court explained: "This testimony was quite typical of the kind of expert testimony regarding gang culture and psychology that a court has discretion to admit. Whether members of a street gang would intimidate persons who testify against a member of that or a rival gang is sufficiently beyond common experience that a court could reasonably believe expert opinion would assist the jury. 'It is difficult to imagine a clearer need for expert explication than that presented by a subculture in which this type of mindless retaliation promotes "respect."' [Citations.] [The expert's] testimony was relevant to help the jury decide which version of the testimony was truthful: the eyewitnesses' initial identifications of defendant as the shooter, and [the gang member witness's] initial statement that defendant admitted being the shooter, or the later repudiations of those identifications and that statement. 'Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore

admissible. [Citations.] An explanation of the basis for the witness's fear is likewise relevant to her credibility and is well within the discretion of the trial court. [Citations.]' [Citations.]" (*Id*. at pp. 945-946.)

We will assume for purposes of argument that the manner in which Officer Hernandez expressed his opinion was improper to the extent he appeared to vouch for the credibility of witnesses. However, given the general admissibility of expert testimony concerning retaliation and intimidation by gang against witnesses (*People v. Gonzalez*, *supra*, 38 Cal.4th at p. 945) defense counsel could reasonably have concluded that an objection would merely have led to a reframing of the questions and might have further emphasized for the jury the gang issues that underlay the case.

## C. Instruction on Provocation

Defendant contends he was denied due process by the lack of proper instruction on provocation sufficient to negate premeditation. He argues the trial court had a sua sponte duty to instruct the jury with CALCRIM No. 522.[2] He argues, in the alternative, that his counsel provided ineffective assistance by failing to request the instruction.

### 1. Additional Background

At trial, defense counsel requested an instruction on heat-of-passion attempted voluntary manslaughter. The trial court rejected the request, concluding there was

---

[2] CALCRIM No. 522 provides: "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the degree of provocation in deciding whether the crime was first or second degree murder."

insufficient evidence of defendant's emotional state at the time of the shooting.[3] Counsel did not request an instruction on provocation, and the trial court did not instruct on that theory.

### 2. Analysis

CALCRIM No. 522 is a pinpoint instruction. (See *People v. Rogers* (2006) 39 Cal.4th 826, 877-879 [holding that the substantially similar CALJIC No. 8.73 was a pinpoint instruction that need not be given sua sponte].) Because trial counsel did not request that instruction, we will address the issue in the context of defendant's alternative argument of ineffective assistance of counsel.

Section 192, subdivision (a) defines voluntary manslaughter as an unlawful killing without malice "upon a sudden quarrel or heat of passion." Section 188 defines malice: "Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, *when no considerable provocation appears*, or when the circumstances attending the killing show an abandoned and malignant heart." (Italics added.)

Our Supreme Court has repeated held that "'"[t]he provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim." [Citation.]' [Citation.]" (*People v. Verdugo* (2010) 50 Cal.4th 263, 294; *People v. Avila* (2009) 46 Cal.4th 680, 705.) Here, the purported provocation was the

---

[3] Defendant does not challenge the trial court's rejection of the instruction on heat of passion.

killing of defendant's son not by the victim, but by another member of the victim's gang. Such "provocation" was therefore legally insufficient to support the instruction.

Moreover, voluntary manslaughter requires that the killing be done "'suddenly as a response to the provocation, and not belatedly as revenge or punishment. Hence, the rule is that, if sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter.' [Citation.]" (*People v. Daniels* (1991) 52 Cal.3d 815, 868.) Under that standard, the killing of defendant's son more than a year earlier would not support an instruction on provocation. We thus conclude that counsel's failure to request an instruction on provocation was not ineffective assistance because the evidence did not support such an instruction. (*People v. Lam* (2010) 184 Cal.App.4th 580, 583.)

**D. Admission of CLETS Printout to Establish Prior Conviction Allegations**

Defendant contends he was denied his right to effective assistance of counsel at the court trial on prior conviction allegations when a CLETS printout was admitted without foundation.

*1. Additional Background*

The information alleged a prior serious felony conviction, a 1981 robbery, that qualified as a strike (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), as well as three prison prior convictions. The allegations were tried to the court. To support the strike allegation, the prosecutor introduced the CLETS printout showing that defendant had been convicted of armed robbery, and a certified document from the Department of Corrections and Rehabilitation, Division of Juvenile Justice, which showed that

16

defendant had been committed to the California Youth Authority in that case on June 4, 1981, and released on December 5, 1985.

### 2. *Forfeiture*

Defendant's counsel did not object to the admission of the CLETS printout on the ground of lack of foundation. The People contend he has therefore forfeited his challenge to such evidence. (*People v. Kelly*, *supra*, 42 Cal.4th at p. 793; Evid. Code, § 353, subd. (a).) Again, we will address the issue in the context of defendant's alternative argument that his counsel provided ineffective assistance by failing to object to the evidence.

### 3. *Analysis*

Section 969b provides: "For the purpose of establishing prima facie evidence of the fact that a person being tried for a crime or public offense under the laws of this State has been convicted of an act punishable by imprisonment in a state prison, county jail or city jail of this State, and has served a term therefor in any penal institution, or has been convicted of an act in any other State, which would be punishable as a crime in this State, and has served a term therefor in any state penitentiary, reformatory, county jail or city jail, or has been convicted of an act declared to be a crime by any act or law of the United States, and has served a term therefor in any penal institution, the records or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence."

17

Even assuming for purposes of argument that the documents were used to prove defendant's strike were not properly certified by the official custodian of records, we do not assume ineffective assistance of counsel in the failure to object on that basis. Counsel could reasonably have assumed that the contents of the documents incontrovertibly would prove the strike allegation and that an objection would merely have led to a postponement of the inevitable true finding.

**E. Admission of Rap Sheets**

Defendant contends the admission of the CLETS printout to establish his prior conviction violated the Confrontation Clause because it was testimonial evidence.

In *People v. Taulton* (2005) 129 Cal.App.4th 1218, 1224, the court held that the a defendant's rap sheet was not testimonial hearsay within the meaning of *Crawford v. Washington* (2004) 541 U.S. 36, and its admission under the public records exception to the hearsay rule was not error. (Accord, *People v. Morris* (2008) 166 Cal.App.4th 363, 367-373.) Defendant argues that *Taulton* did not survive the Supreme Court's decision in *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, which held that laboratory certificates showing that substances seized and analyzed contained cocaine were testimonial affidavits subject to the Confrontation Clause. This court has twice rejected that very contention (*People Moreno* (2011) 192 Cal.App.4th 692, 709-711 [Fourth Dist., Div. Two] and *People v. Larson* (2011) 194 Cal.App.4th 832, 837 [Fourth Dist., Div. Two]), although defendant has failed to cite or discuss those cases. We reject defendant's contention for the reasons stated in those cases.

18

**F. Custody and Conduct Credits**

Defendant contends he is entitled to additional custody and conduct credits. The People properly concede that defendant's credits were incorrectly calculated.

*1. Additional Background*

The probation report shows that defendant was arrested on August 26, 2008, and was sentenced on January 13, 2012. The trial court awarded 1,114 days of custody credit, although defendant had actually served 1,236 days in custody. The trial court's minute order shows that conduct credits would be determined under section 2933.2, which provides that persons convicted of murder do not receive conduct or worktime credits. (§ 2933.2, subd. (a).) However, defendant was convicted of attempted murder, not murder, and section 2933.2 therefore does not apply. Rather, under section 2933.1, he is entitled to conduct credits at the rate of 15 percent of his actual time, or 185 days.

IV. DISPOSITION

The trial court is directed to prepare a new sentencing minute order and amended abstract of judgment reflecting 1,236 days of custody credit and 185 days of conduct credit and to forward the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

KING
J.

CODRINGTON
J.

19