Filed 8/11/14  P. v. Williams CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>BRIAND WILLIAMS,<br><br>      Defendant and Appellant. | B241987<br><br>(Los Angeles County<br>Super. Ct. No. BA377243) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Clifford L. Klein, Judge.  Affirmed.

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb, Janet E. Neeley, Joseph P. Lee and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

After a court trial, defendant and appellant Briand Williams was found guilty of failing to register as a sex offender (Pen. Code, § 290.012).[1] He contends the judgment must be reversed because (1) it is based on document that should have been excluded as hearsay and under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*); (2) the judgment is predicated on an unlawful plea in the underlying sex offense case; (3) there is insufficient evidence to show he violated section 290.012; and (4) the 14-year delay in prosecuting him violated his due process rights. We reject these contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, defendant was charged with six counts of violating section 288, subdivision (c),[2] in Los Angeles County Superior Court case No. BA130843 (the 288(c) case).

John Helbling is a paralegal in the Los Angeles County District Attorney's Office. His job for 18 years was to "allege[] and order[]" documents that proved prior convictions. He assembled People's exhibit 2, consisting of, among other things: (1) a certified fingerprint card date-stamped October 29, 1995 and stating a charge of "288(c)" against Briand Bernard Williams; and (2) a certified "Disposition of Arrest and Court Action" form (the disposition) in case No. BA130843 against "Williams, Briand."[3]

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     Section 288, subdivision (c), prohibits lewd or lascivious acts with a child 14 or 15 years old, where the accused is at least 10 years older than the child.

[3]     The remaining documents comprising People's exhibit 2 are: (3) a fingerprint card stating a charge of "211PC"; (4) "Disposition of Arrest and Court Action" form for the section 211 conviction; (5) a "Subsequent Action Disposition Information" form stating that defendant's probation for the robbery was extended three years; (6) a "Subsequent Action Disposition Information" form concerning the robbery; (7) a fingerprint card showing a charge for "118(A) PC PERJURY"; (8) a "Disposition of Arrest and Court Action" form showing defendant's 1998 sentence for violating

Alyson Lunetta, assistant manager for the California Department of Justice's (DOJ) sex offender tracking program, certifies documents in section 290 violation cases. She prepared People's exhibit 1, which shows that defendant signed documents dated January 3, 2002, April 11, 2003, December 30, 2003, and July 14, 2009 stating he was notified of the sex offender registration requirements.[4] These forms are given to an inmate before release from custody. According to documents from the California Sex and Arson Registry, defendant never registered as a sex offender.

Deputy Ralph Olivas is the records deputy at the Inmate Reception Center. He handles detentions, releases, and civil lawsuits. On July 14, 2009, Deputy Olivas gave a sex offender registration requirement form to defendant, who initialed and signed it in his presence.

Otis Graham lives with defendant at 2403 West 75th Street in Los Angeles, and they were living at that address in October 2009.

Wu Liang Huang, a fingerprint identification expert, examined the fingerprint cards in People's exhibit 2 (the section 288, subdivision (c) conviction) and People's exhibit 1 (the notification), and they match defendant's fingerprints.

An amended information dated February 8, 2011, alleged, in count 1, that defendant, on or about October 27, 2009, failed to update his registration annually (§ 290.012, subd. (a)). The information also alleged that defendant had suffered two prior serious or violent convictions (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) and had served two prior prison terms (§ 667.5, subd. (b)).

Defendant waived a jury trial. After a court trial, the court found, on March 14, 2011, beyond a reasonable doubt that defendant had failed to register. The court found not true the prior strike allegations, but found that defendant had served one prior prison term within the meaning of section 667.5, subdivision (b).

---

section 118; and (9) a "Subsequent Action Disposition Information" form that is mostly illegible. All documents were certified.

[4]     The registration notice states, among other things, that a sex offender must register within five working days of release from incarceration, placement or commitment.

On October 5, 2012, the trial court sentenced defendant to two years plus one year, under section 667.5, subdivision (b), for a total of three years in prison.

## DISCUSSION

**I.      The disposition constitutes sufficient evidence defendant had a prior conviction of a crime that required him to register as a sex offender.**

Defendant asserts that there is insufficient evidence he was convicted of a sex crime requiring him to register under section 290.  We disagree.

In assessing the sufficiency of the evidence to support a conviction, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict.  [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see also *Jackson v. Virginia* (1979) 443 U.S. 307.)

Here, defendant's sufficiency of the evidence contention hinges on the admissibility of People's exhibit 2, and, specifically, the certified disposition from the

4

DOJ.[5]  The disposition states, among other things, defendant's name ("Williams, Briand"), date of birth ("10/20/65"), arrest date ("9/26/95"), date of sentence ("7/16/96"), the charge ("288(c) PC"), and sentence (36 months' probation).  To support admission of the disposition into evidence, Helbling, a paralegal in the Los Angeles County District Attorney's Office, testified that for 18 years he "alleged and ordered" documents that prove prior convictions, and, for the past three years, he has ordered discovery.  To do these jobs, he attended 16 hours of "seminars, where representatives from California Department of Corrections and representatives from the Department of Justice" explained the procedures.  He described the disposition as "a form that's generated by the Department of Justice.  It's information [that] they get from the courts and it's just a summary of what happened on a particular case."

Defendant correctly asserts that the disposition is hearsay, offered to prove the truth of the matter asserted; namely, defendant was convicted of section 288, subdivision (c), in 1996.  (Evid. Code, § 1200.)[6]  But "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies:  [¶]  (a) The writing was made by and within the scope of duty of a public employee.  [¶]  (b) The writing was made at or near the time of the act, condition, or event.  [¶]  (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."  (Evid. Code, § 1280; see also *People v. Martinez* (2000) 22 Cal.4th 106, 119-120 (*Martinez*).)  "A trial court has broad discretion in determining whether a party has established these foundational requirements." (*Martinez*, at p. 120.)  A reviewing court may overturn the trial court's exercise of discretion " ' "only upon a clear showing of abuse." ' [Citations.]" (*Ibid.*)

---

[5]  Unable to locate the entire superior court case file in case No. BA130843, the prosecution relied primarily on exhibit 2 to prove that defendant was convicted of section 288, subdivision (c).

[6]  Defense counsel objected to exhibit 2 because it had not been produced to him. He did not object to it on hearsay grounds.

In *Martinez*, the prosecution introduced an uncertified computer printout from the DOJ's computer system, known as the California Law Enforcement Telecommunications System (CLETS), to prove that the defendant had served prior prison terms. (*Martinez, supra,* 22 Cal.4th at p. 113.) The prosecution argued that the printout was an official record, and therefore admissible under an exception to the hearsay rule. (Evid. Code, § 1280.) To satisfy the official records requirement that the writing was made at or near the time of the act, condition, or event, *Martinez* relied on statutes requiring law enforcement agencies to report criminal proceedings to the DOJ and requiring the DOJ to provide information on request within certain time limits. (*Martinez*, at pp. 121-125; § 11101 [requiring Attorney General to procure all information regarding persons convicted of a felony]; § 11105 [requiring the DOJ to maintain state summary criminal history information]; § 13100 [finding, among other things, that agencies and courts require speedy access to final disposition information, and that recording, reporting, storage, analysis, and dissemination of criminal offender record information must be made more uniform and efficient, and better controlled and coordinated]; § 13151 [requiring courts to furnish a disposition report to the DOJ].) To establish that these reporting and recording duties were performed, *Martinez* cited the presumption that an official duty is regularly performed (Evid. Code, § 664). (*Martinez*, at p. 125.) As to the trustworthiness requirement, the court again relied on the statutes, in addition to the testimony of a deputy sheriff that the defendant, during a conversation with her, did not deny the accuracy of information consistent with information in the CLETS printout. (*Id.* at p. 131.)

Under *Martinez*, the trial court here did not abuse its broad discretion by admitting the disposition.[7] (*Martinez, supra,* 22 Cal.4th at p. 120, citing *People v. Beeler* (1995) 9 Cal.4th 953, 978 [trial court has broad discretion to determine whether foundational requirements have been met].) First, Helbling, the paralegal from the district attorney's

---

[7]    Because defendant's trial counsel did not object to the disposition as hearsay, the trial court did not expressly consider the official records exception to the hearsay rule.

office,[8] testified that the DOJ generated the disposition based on "information [that] they get from the courts and it's just a summary of what happened on a particular case." This testimony, along with the statutes cited in *Martinez*, established that the disposition was made by and within the scope of duty of a public employee. (*Martinez,* at pp. 121-125 & Penal Code sections cited therein.)

According to *Martinez*, these same statutes can satisfy the next two requirements of the official records exception: the writing was made at or near the time of the act, condition, or event and the sources of information and method and time of preparation were such as to indicate its trustworthiness. (Evid. Code, § 1280, subds. (b) & (c).) Although *Martinez* acknowledged that the statutes do not specify when the DOJ is required to enter criminal information it receives, the court concluded, from its review of the statutes, that the DOJ "had a statutory duty to record the information detailed in the CLETS printout 'within a short period of its receipt from the reporting agency' [Citation.]" (*Martinez, supra,* 22 Cal.4th at p. 127.) Under *Martinez*, we can therefore presume that the DOJ created the disposition shortly after defendant's conviction and the DOJ's receipt of information concerning that conviction. (Evid. Code, § 664; *Martinez,* at p. 127.)

As to the trustworthiness requirement, information in the disposition was corroborated by other evidence. Here, on his release from jail in July 2009, defendant signed a "Notice of Sex Offender Registration Requirement." That certified document[9] states, among other things, that his "registrable conviction" was a "288(c)" with a "7/16/1996" conviction date. Deputy Olivas testified he gave the form to defendant, who

---

**8**     Helbling also testified in *Martinez.*

**9**     Evidence Code section 1530, subdivision (a) provides in pertinent part that a "purported copy of a writing in the custody of a public entity, or of an entry in such a writing, is prima facie evidence of the existence and content of such writing or entry" if, with respect to writings kept by entities within the United States, the copy purports to be published by the authority of the nation or state and the copy is certified as a correct copy by a public employee having legal custody of the writing.

initialed and signed it in front of the deputy on July 14, 2009. (See, e.g., *Martinez, supra,* 22 Cal.4th at p. 131 [deputy testified that she asked the defendant about information consistent with information in the CLETS printout].) The information in the notice is consistent with the information in the disposition, thereby indicating the disposition's trustworthiness.

We therefore conclude that the disposition was properly admitted. This compels us to reject defendant's related contention that his trial counsel provided ineffective assistance of counsel for failing to object to the disposition as hearsay. A defendant claiming ineffective assistance of counsel must establish both error and prejudice. (See generally, *Strickland v. Washington* (1984) 466 U.S. 668.) Defendant cannot establish prejudice as a result of any failure to object to the disposition, because it was admissible under the official records exception. (Cf. *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1520-1524 [defense counsel's failure to object to inadmissible evidence impeaching witnesses was prejudicial error because credibility of witnesses was critical].)

We therefore also reject the ultimate issue defendant raises; namely, that there is insufficient evidence to show he was convicted of section 288, subdivision (c), a registrable sex offense. The disposition states that defendant was convicted of "288(c)" and that he was sentenced to 36 months' probation on July 16, 1996. The disposition therefore constitutes sufficient evidence that defendant was convicted of a sex offense.

## II. The disposition is not testimonial, and therefore its admission did not violate the confrontation clause.

Defendant next contends that admitting the disposition form violated his Sixth Amendment confrontation rights. (*Crawford, supra,* 541 U.S. at p. 61.) We disagree.[10]

A criminal defendant has the constitutional right to confront and cross-examine adverse witnesses. (U.S. Const., 6th Amend.; *People v. Lopez* (2012) 55 Cal.4th 569, 573, 576.) The Sixth Amendment therefore generally bars admission at trial of a testimonial out-of-court statement offered for its truth against a criminal defendant,

---

[10] Defendant's trial counsel did not object to the disposition form under the confrontation clause.

8

unless the maker of the statement is unavailable to testify and the defendant had a prior opportunity for cross-examination. (*Crawford, supra,* 541 U.S. at p. 69; *Davis v. Washington* (2006) 547 U.S. 813, 821; *People v. Livingston* (2012) 53 Cal.4th 1145, 1158; *Lopez*, at pp. 573, 580-581.) Although *Crawford* limited the confrontation right to testimonial statements, the court declined to provide a comprehensive definition of "testimonial." (*Crawford,* at p. 68.) It did, however, give examples of testimonial statements: "(1) plea allocutions showing the existence of a conspiracy; (2) grand jury testimony; (3) prior trial testimony; (4) ex parte testimony at a preliminary hearing; and (5) statements taken by police officers in the course of interrogations. [Citation.]" (*People v. Cervantes* (2004) 118 Cal.App.4th 162, 172.)

Since *Crawford*, courts have considered what types of records or documents are "testimonial." *People v. Taulton* (2005) 129 Cal.App.4th 1218, 1224, held that records of a defendant's prior convictions (the "969b" packet) are not testimonial, because the test for determining whether a statement is testimonial is "whether it was obtained for the purpose of potentially using it in a criminal trial or determining if a criminal charge should issue." Because rap sheets document acts and events relating to convictions, *Taulton* analogized rap sheets to nontestimonial business records. (*Id.* at p. 1225.) Although rap sheets may ultimately be used in criminal proceedings, they are not prepared for either that purpose or for determining whether criminal charges should issue. (*Ibid.*; accord *People v. Morris* (2008) 166 Cal.App.4th 363, 373 [admitting certified CLETS rap sheet as proof of prior prison terms does not violate the confrontation clause].)

Defendant distinguishes *Taulton* and *Morris* because they involved "accepted methods of proving records of prior convictions," namely, 969b packets and CLETS printouts. It may not be as common for the prosecution to use DOJ disposition forms to evidence a prior conviction. But the focus of a *Crawford* claim is whether the document at issue is testimonial, that is, whether the documents were prepared for the purpose of providing evidence in criminal trials or for determining whether criminal charges should issue. (*People v. Taulton*, *supra*, 129 Cal.App.4th at p. 1225.) The disposition was not

9

primarily prepared for that purpose. Its primary purpose "is to permit law enforcement to track necessary information regarding the arrest, conviction, and sentencing of individuals and to communicate that information to other law enforcement agencies." (*People v. Morris*, *supra,* 166 Cal.App.4th at pp. 370-371.) That a disposition may be used at a criminal trial does not mean it was created primarily for that purpose.

We therefore conclude that the disposition form is nontestimonial; hence, there is no *Crawford* or confrontation clause violation.

### III.    Validity of defendant's plea in the 288(c) case.

Defendant next contends he was never advised of his duty to register as a sex offender at his sentencing on the underlying predicate offense, the 288(c) case. He argues that because of the alleged misadvisement, his conviction in this case is predicated on an unlawful plea, and the judgment here must be reversed.

Before reaching the ultimate issue, an overview of the procedural history in the 288(c) case is helpful. In 1996, defendant was charged with six counts of violating section 288, subdivision (c) in case No. BA130843.[11] Defendant pled guilty to one count of violating section 288, subdivision (c). He was sentenced to three years' probation on July 16, 1996. The reporter's transcript from his sentencing hearing is not a part of the record on appeal.

In February 2011, the amended information in this case was filed, alleging that, on or about October 27, 2009, defendant failed to update his registration (§ 290.012, subd. (a)). Defendant filed motions essentially contending that this case should be dismissed or his plea in the 288(c) case should be dismissed because he was never advised of the registration requirement. After the court trial was held and he was found guilty of violating section 290.012, subdivision (a), defendant filed a petition for writ of habeas corpus in the superior court regarding the alleged misadvisement. The face page of that petition states it is filed in case No. BA130843 (the 288(c) case) and case

---

[11]    The information in the 288(c) case is part of the record on appeal here, although the prosecution was unable to locate the majority of the superior court file in preparation for the court trial on defendant's failure to register as a sex offender.

No. BA377243 (the case at issue). The motions and the petition for writ of habeas corpus were denied.[12] As to the motions, the courts found that the motions were not properly before them. It does not appear that defendant appealed the denial of his petition for writ of habeas corpus.

The first issue defendant raises concerning the 288(c) case is whether the trial court had a duty to advise him of the registration requirement. It did have such a duty. "When a criminal defendant chooses to plead guilty (or, as here, no contest), both the United States Supreme Court and this court have required that the defendant be advised on the record that, by pleading, the defendant forfeits the constitutional rights to a jury trial, to confront and cross-examine the People's witnesses, and to be free from compelled self-incrimination. [Citations.] In addition, this court has required, as a judicially declared rule of state criminal procedure, that a pleading defendant also be advised of the direct consequences of his plea. [Citations.] If the consequence is only collateral, no advisement is required." (*People v. Gurule* (2002) 28 Cal.4th 557, 633-634; see also *In re Moser* (1993) 6 Cal.4th 342, 351; *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122.) The duty to register as a sex offender under section 290 is a direct consequence of a conviction for committing enumerated sex offenses, including section 288, subdivision (c). (*People v. McClellan* (1993) 6 Cal.4th 367, 376 (*McClellan*);[13] *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605; *In re Birch* (1973) 10 Cal.3d 314, 322; *People v. Zaidi* (2007) 147 Cal.App.4th 1470, 1481.)[14] Therefore,

---

[12] The habeas corpus petition was filed on June 3, 2011, *after* the court trial concluded. It was denied on August 12, 2011, and neither defendant nor his counsel made an appearance. If there is a reporter's transcript from that date, it does not appear to be a part of the record on appeal.

[13] In *McClellan*, defendant pleaded guilty to assault with intent to commit rape. (6 Cal.4th at p. 371.) He sought to have his plea set aside on appeal because the trial court failed to advise him, before entry of his plea, that he would be required to register as a sex offender. (*Id.* at p. 372.)

[14] The People argue that the duty to register as a sex offender is merely a collateral, not a direct, consequence of a conviction, and therefore the trial court in the 288(c) case

the trial court in defendant's 288(c) case had a duty to advise him he was required to register as a sex offender.

The next issue therefore is what effect, if any, does the trial court's alleged failure to advise defendant of his registration requirements in the 288(c) case have on this case for defendant's failure to comply with those requirements? The first problem, however, is that the record on appeal does not reveal whether the trial court in the 288(c) case failed to tell defendant he had to register as a sex offender. Neither a reporter's transcript from the 1996 sentencing hearing nor a settled statement has been submitted on appeal, and it does not appear that defendant sought to supplement the record on appeal with such documents. Other than defendant's bare assertion he was not advised in 1996 of the sex offender registration requirement, there is no evidence before us that the trial court in the 288(c) case failed in its advisement duties.

This leads us to a procedural issue: How should the misadvisement issue been raised in the trial court below? Defendant filed, in this case No. B377243, various motions concerning the alleged misadvisement in the 288(c) case.[15] Those motions were denied, because the trial court found they were not properly before it. To the extent defendant sought, via those oddly titled motions, to strike his conviction in the 288(c)

---

did not have a duty to advise defendant of the requirement. The People base their argument in part on *People v. Picklesimer* (2010) 48 Cal.4th 330, 337-338. In the context of addressing the scope of a trial court's post-remittitur jurisdiction to issue all orders necessary to carry judgment into effect, *Picklesimer* referred to the defendant's sex registration requirements as "collateral consequences" of the judgment. (*Ibid.*) That statement was, as the People concede, dicta in a case that was about jurisdiction and not about whether sex offender registration requirements are direct or collateral consequences. In any event, *McClellan*—a California Supreme Court case holding sex offender registration requirements are a direct consequence of a conviction—has not been overruled.

[15]     He filed, for example, a "Motion for a Dismissal of This Action or a New Trial and/or Arrest of Judgement [*sic*] (PC1181; 1185; 1187 and/or 1188); Common Law Motion to Dismiss"; and a "Motion for a Judgement of Acquittal; or New Trial of BA130843; or Dismissal of This Action; and/or Arrest of Judgement in BA130843; Common Law Motion to Dismiss."

12

case, those motions constituted an improper collateral attack on the 288(c) case. Although a trial court must advise defendants of the direct consequences of a guilty plea, including any registration requirements (*McClellan, supra,* 6 Cal.4th at pp. 375-376 & fn. 8), the requirement an accused be advised of the consequences of the plea is not *constitutionally* compelled, and failure to advise as to consequences constitutes error which requires that the plea be set aside only if prejudice is demonstrated. (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1031-1032; *In re Moser*, *supra*, 6 Cal.4th at p. 352.) Because a failure to advise a defendant of the penal consequences of a plea does not constitute constitutional error, defendant cannot collaterally attack his section 288, subdivision (c) conviction by way of a motion to strike the conviction in the current case. (See *People v. Sumstine* (1984) 36 Cal.3d 909, 922 ["a defendant seeking to challenge a prior conviction on *any* ground must allege actual denial of his constitutional rights"].)

We do note that defendant filed a petition for writ of habeas corpus, designating on its cover page the case numbers in this case (BA377243) and the 288(c) case (BA130843). But he filed it on June 3, 2011, *after* the court trial in this case concluded. It was denied on August 12, 2011, and the reasons for the denial are not in the record on appeal. It is also unclear whether defendant appealed the denial of his writ petition. Therefore, on this record, it appears that a court below did consider the issue of the misadvisement on the merits and rejected it.

Notwithstanding that it cannot be determined on this record whether defendant was advised of registration requirements in the 288(c) case, defendant would, in any event, have to establish he was prejudiced as a result of any misadvisement, that is, it is reasonably probable he would not have entered into the plea agreement had he been advised of the lifetime registration requirement. (See, e.g., *McClellan, supra,* 6 Cal.4th at p. 378 ["Although defendant alleges that had he properly been advised, he would not have entered his plea of guilty, there is nothing in the record on appeal to support this contention"]; *In re Moser, supra,* 6 Cal.4th at pp. 352-353.) Nothing in this record shows that defendant was prejudiced.

To the contrary, the registration requirement is automatic, and therefore defendant had no negotiating power with respect to it. (*McClellan, supra,* 6 Cal.4th at p. 380 [registration requirement is not a permissible subject of plea negotiation]; *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.) Defendant could not have made striking the registration requirement a term of his plea, and he fails to state he would not have entered into the plea agreement had he been properly advised. In fact, the notice in the information in the 288(c) case states: " 'NOTICE: Conviction of this offense will require you to register pursuant to Penal Code section 290. Willful failure to register is a crime.' " He was also charged with six counts of violating section 288, subdivision (c), but was allowed to plead to only one count, receiving 36 months' probation.

That defendant was not prejudiced by any misadvisement about the registration requirement is further demonstrated by his failure to challenge the requirement until this case was filed. People's exhibit 1 shows that, notwithstanding any failure to advise him of the requirement in 1996, he was aware of it at least as of January 3, 2002. At that time, he signed a notice of sex offender registration requirements in the presence of Deputy Olivas, who testified at trial. He signed similar notices in 2003 and 2009. Yet, the record does not show that defendant took any action to set aside his plea in the 288(c) case based on any misadvisement of the sex offender registration requirement until the current case was filed. (See, e.g., *McClellan, supra,* 6 Cal.4th at p. 377 [absent a timely objection, a defendant waives a claim of error as to a trial court's misadvisement concerning the consequences of a guilty plea]; cf. *People v. Zaidi, supra,* 147 Cal.App.4th at pp. 1488-1489 [record contained evidence of prejudice and of defendant's timely objection that he had never been advised his registration requirement was for life].)

We therefore conclude that defendant is not entitled to a reversal of the judgment because of any alleged misadvisement in the 288(c) case about the sex offender registration requirement.

14

**IV.    There is sufficient evidence defendant failed to register his change of address after his 2009 release from jail.**

Defendant next argues that there is no evidence he committed the specific crime with which he was charged; that is, section 290.012, subdivision (a).  That section provides:  "Beginning on his or her first birthday *following registration or change of address*, the person shall be required to register annually, within five working days of his or her birthday . . . ."  (§ 290.012, italics added.)  Defendant reasons that because section 290.012 requires a person to re-register on his or her first birthday "following registration" and because defendant never registered, he cannot be found guilty of failing to re-register.

The section, however, also requires a defendant to register following a "change of address."  There is sufficient evidence he failed to do that.  Defendant was charged with violating section 290.012 "[o]n or about October 27, 2009."  Deputy Olivas testified that defendant was released from custody on or about July 14, 2009.  Otis Graham testified that he and defendant were living together at 2403 West 75th Street in Los Angeles in October 2009.  Defendant's birthday is October 20, 1965.  Because defendant changed his address from jail to the address at West 75th Street, he should have registered that address within five days of his October 20th birthday in 2009.  (§ 290.012.)  But defendant never registered as a sex offender.

Defendant asserts that designating his move from jail to the address on West 75th Street a "change of address" does not further the purpose of the sex registration law.  That purpose is to monitor convicted sex offenders to ensure they are readily available for police surveillance.  (*People v. Williams* (2009) 171 Cal.App.4th 1667, 1672.)  Requiring a convicted sex offender to register within five days of his or her first birthday following release from jail furthers that purpose.  It likely would be common for a person who has been incarcerated to lose whatever living accommodations they had before entering jail.  For the police to assume that a person released from jail will reside at their former address would be an illogical assumption that would hinder law enforcement's ability to

15

monitor sex offenders.  Therefore, a move from jail to a former address constitutes a change of address.

## V.    Due process.

Defendant was convicted in the 288(c) case in 1996.  Fourteen years passed, however, before charges were filed claiming he'd failed to comply with sex registration requirements (§ 290.012, subd. (a)).  Defendant contends that this delay compromised his ability to defend against the current charges, thereby denying him due process under Fifth and Fourteenth Amendments of the United States Constitution.  We disagree.

Unreasonable delay between the time a crime is committed and the accusatory pleading is filed may constitute a denial of the right to a fair trial and to due process of law under the state and federal Constitutions.  (*People v. Morris* (1988) 46 Cal.3d 1, 37, disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543-544, fn. 5; *People v. Cowan* (2010) 50 Cal.4th 401, 430.)  A defendant seeking to dismiss a charge on this ground must demonstrate prejudice arising from the delay, and the prejudice must be weighed against justification for the delay.  (*Morris,* at p. 37; see also *Scherling v. Superior Court* (1978) 22 Cal.3d 493, 504-507.)  " Prejudice may be shown by ' "loss of material witnesses due to lapse of time [citation] or loss of evidence because of fading memory attributable to the delay." ' [Citation.]" (*Cowan*, at p. 430; see also *People v. Abel* (2012) 53 Cal.4th 891, 908.)

" '[U]nder California law, negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process. . . .  If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation.' [Citation.]  If the defendant establishes prejudice, the prosecution may offer justification for the delay; the court considering a motion to dismiss then balances the harm to the defendant against the justification for the delay.  [Citation.]  But if the defendant fails to meet his or her burden of showing prejudice, there is no need to determine whether the delay was justified.  [Citations.]" (*People v.*

16

*Abel, supra,* 53 Cal.4th at p. 909, fn. omitted.)[16] A trial court's motion to dismiss for prejudicial pre-arrest delay is reviewed for an abuse of discretion, although we defer to any factual findings if substantial evidence supports them. (*People v. Cowan, supra,* 50 Cal.4th at p. 431.)

Given the standard of review, the People's argument that defendant forfeited this issue is well taken. Although defendant did file motions to dismiss in the court below referencing the delay in filing charges as being "so unfair that it shocks the conscience of the law and the community," he did not expressly raise the due process argument. Nor does he cite where in the record the trial court addressed any due process argument or gave the prosecutor the opportunity to justify the delay between the commission of the offense and the filing of charges. In the absence of a justification for the delay, the trial court could not balance any claimed harm (here, the loss of the superior court file in the 288(c) case) against the reason for the delay.

In any event, the prejudice defendant claims is the alleged loss of the superior court file in case No. BA130843, the 288(c) case. As we have found, even in the absence of that file, the disposition was sufficient evidence he was convicted of a sex offense triggering the registration requirements in section 290. As to any claim that the file would have shown that the trial court in the 288(c) case never advised him of the registration requirement, this record contains no evidence of that, beyond defendant's bare assertion the advisement was never given. Nor does the record show that defendant attempted to obtain the reporter's transcript from his 1996 sentencing hearing, which would show whether he was advised of the sex offender registration requirement.

---

[16] Because the law under California's Constitution is "at least as favorable to defendant as federal law," courts apply California law to such due process claims. (*People v. Abel, supra,* 53 Cal.4th at p. 909, fn. 1.)

We therefore cannot conclude, on this record, that defendant's due process rights were violated.

## VI.     Cumulative error.

Defendant contends that the cumulative effect of the purported errors deprived him of a fair trial.  As we have " 'either rejected on the merits defendant's claims of error or have found any assumed errors to be nonprejudicial,' " we reach the same conclusion with respect to the cumulative effect of any purported errors.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1235-1236; *People v. Butler* (2009) 46 Cal.4th 847, 885.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

18